GRACEY v GROSSE POINTE FARMS CLERK

Docket Nos. 121453, 121979. Submitted October 25, 1989, at Detroit. Decided October 25, 1989. Opinion released November 14, 1989.

A challenge was made to the results of the 1989 primary election for the post of municipal judge of the City of Grosse Pointe Farms on the basis that the wife of the second-place finisher, Paul C. Gracey, had hand delivered certain absentee ballots to the city clerk's office without having made the certification required by law. When both the City Clerk of Grosse Pointe Farms and the Wayne County Board of Canvassers refused to canvass the ballots and certify the results, the Board of State Canvassers received the ballots, counted them and certified the results. Eugene Casazza, the third-place finisher, then petitioned for a recount. The Wayne County Board of Canvassers filed an action in Wayne Circuit Court for a determination as to the respective duties of the county and state boards under these circumstances. The circuit court determined that the county board should conduct the recount under the direction and supervision of the state director of elections, with the state board reviewing the certification of the county board. The Wayne County Board of Canvassers conducted its examination and recount and forwarded a report of its findings to the county prosecutor and the circuit judges of the county. The county board, however, did not certify its results. Paul C. Gracey then instituted an action in Wayne Circuit Court, seeking mandamus against the state board, the county board and the city clerk and asking that the county board be directed to certify the results of its recount to the state board. Eugene Casazza intervened and filed a counterclaim for declaratory relief, seeking that the court uphold his challenge to all of the absentee ballots cast in the primary. The Wayne Circuit Court, Richard C. Kaufman, J., following an evidentiary hearing, found that the actions voided the affected absentee ballots and, because the number of affected ballots was greater than the vote difference between Gracey and Casazza, ordered the recast-

REFERENCES

Am Jur 2d, Elections §§ 245, 250, 252, 302.
Construction and effect of absentee voter's laws. 97 ALR2d 257.

ing of the absentee ballots. An order to that effect was entered on October 9, 1989. On the following day Gracey filed a claim of appeal. Of the 315 absentee ballots sent out, 265 were returned and counted. On the basis of the October 16, 1989, count of the recast absentee ballots, Casazza became the second-place finisher, besting Gracey by one vote. By an order of October 17, 1989, the circuit court declared the results of the October 16 count to be final and correct. On October 20, 1989, Gracey filed a motion for stay and for an expedited appeal. The motion for a stay was granted on October 23, 1989. On October 25, 1989, oral argument was had in the Court of Appeals. Gracey was permitted to file a claim of appeal from the October 17 order holding the new results to be final. Gracey filed a motion for peremptory reversal, while Casazza filed a motion to affirm. Following oral argument, the Court of Appeals issued an order which granted the motion to expedite the appeal, denied the motion to affirm, granted the motion for peremptory reversal, and granted mandamus, requiring the Wayne County Board of Canvassers to certify its results to the Board of State Canvassers before noon on October 26, requiring the Board of State Canvassers to certify its results by noon October 27 and requiring the City Clerk of Grosse Pointe Farms to act upon the state board's certification and prepare and distribute ballots in accord with that certification.

Subsequently the Court of Appeals issued an opinion in which it *held:*

1. The issuance of an opinion subsequent to the issuance of an order deciding an appeal is appropriate where, as here, a quick resolution is required but an explanation of the rationale for that decision is desirable.

2. Judicial review of the election results prior to a final decision by the administrative body charged with the responsibility of certifying election results is improper. The circuit court should have granted the complaint for mandamus and required the county board to certify its results, since mandamus was the only appropriate judicial relief at that point.

3. Since there was no allegation that Mrs. Gracey in any way altered the absentee ballots she delivered to the clerk's office and the provision of the statute for which there was a lack of compliance was directory in nature, those irregularities should not defeat the will of the majority of the electorate.

4. The appropriate remedy under these circumstances is to proportionally reduce the absentee votes cast for each candidate by the number of votes which is calculated by multiplying the number of absentee votes each candidate received by a

fraction, the numerator of which is the number of challenged ballots, seventeen, and the denominator of which is the total number of absentee ballots case, 315.

Motion for peremptory reversal granted, motion to affirm denied and mandamus granted.

1. ELECTIONS — JUDICIAL REVIEW — BOARDS OF CANVASSERS — REMEDIES — MANDAMUS.

Judicial review of substantive questions relating to elections should not be undertaken prior to a decision on the merits by the board of canvassers of a claim challenging certain ballots; where the board of canvassers has not reached a decision on the merits of the challenge within the period provided by law, the judicial remedy then available is a writ of mandamus directing the board to do its statutory duty.

2. ELECTIONS — IRREGULARITIES IN ELECTION PROCESS — REMEDIES.

Irregularities in the conducting of elections which do not affect the results of the election will not be used to defeat the will of the majority where the irregularities involve the directory provisions of the statute governing the conducting of elections.

3. ELECTIONS — REMEDIES — PROPORTIONAL REDUCTION OF ILLEGAL BALLOTS.

The proper remedy where there are an ascertainable number of absentee ballots which should be voided because of some irregularity is to reduce the number of absentee votes cast for each candidate by a percentage which is to be calculated by using the number of void absentee ballots as the numerator and the total number of absentee ballots as the denominator.

*Durant & Durant, P.C.* (by *Lawrence A. Friedman*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon* and *Todd B. Adams,* Assistant Attorneys General, for the Board of State Canvassers.

*Plunkett & Cooney, P.C.* (by *John P. Jacobs*), for Eugene Casazza.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Timothy H. Howlett* and *Mark K. Riashi*), for the City of Grosse Pointe Farms.

Before: REILLY, P.J., and GRIBBS and SULLIVAN, JJ.

PER CURIAM. Paul Gracey, plaintiff and counter-defendant, filed a motion for stay of an October 17, 1989, order of the Wayne County Circuit Court which certified the results of a court ordered recast or reballoting of absentee votes in the primary election for municipal judge of the City of Grosse Pointe Farms. In consequence of that order, intervening defendant and counter-plaintiff Eugene Casazza became the second nominee, along with the incumbent, Matthew Rumora, to be listed on the ballot in the general election. Having previously granted the stay, we reverse and order mandamus.

Constraints of time, which are characteristic of election cases, *Ferency v Secretary of State,* 409 Mich 569, 599-600; 297 NW2d 544 (1980), prompted this Court to take the unusual step of granting oral argument on the motion for stay. See MCR 7.211(D).

By the time of oral argument, it became apparent that there were jurisdictional problems within the context of the statutes and rules governing the Court of Appeals. Initially, Gracey had filed a claim of appeal, Docket No. 121453, from a circuit court order of October 9, 1989, denying plaintiff's request for mandamus against the Wayne County Board of Canvassers, declaring the original absentee ballots void, and ordering a recast of the absentee ballots by a defined procedure.[1] With the filing of the claim of appeal, Gracey moved for a

---

[1] The circuit court patterned its decision on *Akizaki v Fong,* 51 Hawaii 354; 461 P2d 221 (1969). Candidate Casazza did not wish to prevail by having votes rejected, cf. *Attorney General ex rel Harwood v Stillson,* 108 Mich 419; 66 NW 388 (1896), but preferred to abide by an "untainted" revote. In light of the further holdings herein, we express no opinion on the propriety of such a reballoting.

stay of the October 9, 1989, order and immediate consideration of that motion, MCR 7.211(C)(6). The stay was denied.

Following the recast of the original absentee votes and the judicial certification on October 17, which altered the initial order of finish and placed Gracey third instead of second, Gracey filed another motion for stay in Docket No. 121453, which generated the hearing before this Court. However, at oral argument this Court noted that while an appeal from a final order—and the order of October 9 had been certified as final pursuant to MCR 2.604—includes all prior interlocutory orders, *Tomkiw v Sauceda,* 374 Mich 381; 132 NW2d 125 (1965); *Morris v Morris,* 5 Mich 171 (1858), it does not bring before the reviewing court any subsequent orders. Therefore, at oral argument, with the consent of all parties, plaintiff Gracey was permitted to file a claim of appeal from the final order of October 17 in Docket No. 121979. These appeals have been consolidated by separate order.

This Court then entertained, with the consent of all parties, motions for peremptory reversal and motions for immediate consideration thereof in both appeals of right by Gracey, and motions to affirm in both cases by Casazza. MCR 7.211(C)(3), (4), and (6). Since by this point in the proceedings it was apparent that all parties desired a final decision from this Court, this Court was thereby enabled to honor the rights of the parties to oral argument in an appeal of right. MCR 7.214(A). The parties were allowed oral argument until all sides had been heard to exhaustion. MCR 7.214(B).

Given the necessity that ballots be printed in time for the November election, it is traditional in these election cases for the courts to rule peremptorily, *Council About Parochiaid v Secretary of State,* 403 Mich 396, 397; 270 NW2d 1 (1978), in

some cases rendering a decision by order, with an opinion containing the court's rationale filed at a later date. *American Independent Party v Secretary of State,* 397 Mich 689, 692; 247 NW2d 17 (1976). While this Court normally would address a motion only by order, in cases such as the present one, where the issue presented is of some importance and the Court wishes to explain its action to the parties, the issue may be resolved by opinion instead of or in addition to an order. *Kerby v Judges' Retirement Bd,* 166 Mich App 302, 303; 420 NW2d 195 (1988), and cases there cited.

The election results, as initially certified by the Board of State Canvassers, acting in default of all subordinate canvassing agencies, pursuant to § 822(2) of the Elections Law, MCL 168.1 *et seq.*; MSA 6.1001 *et seq.*,[2] reflected the following vote totals:

| Candidate | Regular Votes Received | Absentee Votes Received | Total |
|---|---|---|---|
| Rumora | 850 | 184 | 1,034 |
| Gracey | 215 | 93 | 308 |
| Casazza | 269 | 29 | 298 |
| Roosen | 140 | 9 | 149 |
| | 1,474 | 315 | 1,789 |

The evidence presented to the trial court shows that Mrs. Irene Gracey, wife of the candidate, hand delivered a number of absentee ballots to the city clerk's office, although she was not a "member of the immediate family of the voter" within the degrees of consanguinity or legal relationship stated in Step 5(c) of the instructions for absent voters set forth in § 764a of the Elections Law. While Mrs. Gracey may be a registered elector,

---

[2] All references to statutory sections are references to sections of the Elections Law.

she failed to make the certification required by step 5(d).

There is, however, no allegation that Mrs. Gracey engaged in any fraud with respect to these absentee ballots; no claim is made, nor has any evidence been offered, that she opened any of the ballots, made any markings on the ballots, altered the ballots, substituted different ballots for those given to her for delivery, or influenced the voters in the voting of their ballots. The city clerk testified that there was no evidence that any of the ballots in question had been subjected to tampering.

The evidence also shows that Mrs. Gracey, at least in part, took her cue from the city clerk's office, which even gave her an absentee ballot previously received by the clerk, with instructions that she should take it to the voter to obtain a signature on the ballot envelope, and then return it to the clerk's office.

Mrs. Gracey's actions became known immediately after the election, in consequence of which the city clerk's office refused to canvass the ballots, and the Wayne County Board of Canvassers similarly failed to canvass the ballots within the time allowed by statute. In default of their actions, the Board of State Canvassers received the ballots, counted them, and certified the results in the numbers above indicated, pursuant to the duty and authority of the Board of State Canvassers as provided in § 822(2). Casazza then petitioned for a recount.

This is actually the third case involving this particular election. Initially, the Wayne County Board of Canvassers filed a petition with the Wayne Circuit Court, seeking extraordinary relief. There were no other parties, but all present parties, with the exception of the Board of State

Canvassers, were notified of the action. The circuit court, however, dismissed the action.

After the petition for recount had been filed, the Wayne County Board of Canvassers commenced a second action, this one against the Board of State Canvassers, seeking a determination of their respective roles in the recount process. Because the Board of State Canvassers had conducted the original canvass pursuant to the default provisions of § 822(2), the Board of State Canvassers contended that it had the sole authority regarding any recount, pursuant to § 879(1)(a). All candidates and all present parties were notified of the action, although only the two boards of canvassers were parties. The circuit court ruled that the Wayne County Board of Canvassers should conduct the recount, under the direction and supervision, however, of the director of elections, as representative of the Board of State Canvassers. Thereafter, the Board of State Canvassers should review the certification of the county board pursuant to § 890 and § 892 of the Elections Law.

Because all present parties had notice and an opportunity to be heard in the prior proceeding, and no appeal was taken, we are of the opinion that rules of preclusion make the earlier circuit court decision binding for purposes of the consolidated appeal. *Wilcox v Sealey,* 132 Mich App 38; 346 NW2d 889 (1984); *Robinson v Dep't of Transportation,* 120 Mich App 656; 327 NW2d 317 (1981). We therefore express no opinion as to the propriety of the circuit court ruling, but simply accept it as the initial building block on which further judicial action in this case must be based.

Following the circuit court's second ruling, the Wayne county board of canvassers conducted the examination and recount in accordance with § 872, and forwarded the requisite written report of its

findings to the county prosecutor and to the circuit judges of the county. However, no further action was then taken by the county board of canvassers. It took the position that it should not certify the recount until the prosecutor completed his investigation and the circuit judges completed such proceedings as might be thereby engendered, at which time it could be determined which votes should properly be counted and which should not.

The inaction of the Wayne County Board of Canvassers stymied further administrative certification of the primary election results. Plaintiff then instituted the present action for mandamus, naming as defendants the Board of State Canvassers, the Wayne County Board of Canvassers, and the Clerk of the City of Grosse Pointe Farms. The relief requested was an order to the county board of canvassers directing it to certify the results of its recount to the Board of State Canvassers.

Casazza then intervened, and filed a counterclaim for declaratory relief, asking the circuit court to uphold, on substantive legal principles, Casazza's challenge to all 315 absentee ballots. The circuit court heard oral arguments within two days of the filing of the complaint for mandamus, then conducted an evidentiary hearing two days later, on October 6.

At that hearing, the only witness was the city clerk, Mr. Solak. In pertinent part, he testified that Mrs. Gracey had initially presented herself at the clerk's office, indicating that several electors who had applied for absentee ballots were downstairs in city hall, were handicapped, and had delegated her to pick up their absentee ballots. A member of the clerk's staff gave Mrs. Gracey the absentee ballots for those indicated absentee electors.

When this came to the attention of the clerk, he

had an informal meeting with Mrs. Gracey, at which Mr. Gracey was apparently present. The clerk instructed Mrs. Gracey that she should not be involved in the handling of any additional absentee ballots. However, the clerk failed to instruct his employees and assistants in a like vein, and thereafter Mrs. Gracey both distributed additional absentee ballots and delivered voted absentee ballots to the clerk's office without objection from any member of the clerk's staff. On receiving the voted ballots from Mrs. Gracey, the clerk's representatives failed to demand from Mrs. Gracey the certification required by Step 5(d) of the instructions in § 764a.

However, Mr. Solak testified that he detected no evidence that any of the ballots had been subjected to tampering or that they did not otherwise represent the considered choices of duly registered electors. He further testified that, on canvassing his entire staff, the maximum number of ballots that Mrs. Gracey might have handled appeared to have been seventeen. The names of the electors involved were ascertained, and because the challenged voter procedures of § 745 had been followed, by virtue of § 764b and Casazza's challenge, those ballots could, if necessary, be segregated and, ultimately, excluded from the canvass. Two of the seventeen persons so identified had, however, voted by machine on primary election day. The clerk could not be absolutely certain that Mrs. Gracey had not handled additional ballots, but the suggestion that she did is purely speculative. Any uncertainty arises from the imprecision of the collective memory of the city clerk and his staff and the failure to follow the mandates of Step 5(d) of the instruction in § 764a.

Gracey was present at the hearing, but not called as a witness by either side. Mrs. Gracey was

not present, but she had not been subpoenaed to attend, and she obviously therefore did not testify either. Counsel for Casazza suggested to this Court that these witnesses were within the control of Gracey and that therefore an inference should be drawn that their testimony would not have been helpful to his case. We disagree.

Gracey's action was one for mandamus; he bore the burden of proving that the Wayne County Board of Canvassers had failed to fulfill its clear legal ministerial duty to which he had a clear legal right. Casazza filed a complaint seeking declaratory relief; as challenger, he bore the burden of establishing fraud or other illegality warranting rejection of the contested ballots from the primary election canvass. Merely showing that the ballots were picked up and delivered by Mrs. Gracey in violation of § 759b and Step 5 of the instructions in § 764a did not, by virtue of § 764b(4), necessarily invalidate those ballots, but merely subjected them to the challenged voter procedures of § 745.

We think that no inference arises from the failure of Gracey to introduce Mrs. Gracey's testimony. Both parties could have subpoenaed her and sought to obtain her testimony. MCL 600.2161; MSA 27A.2161. Since Mrs. Gracey was equally available to both party candidates, the omission of her testimony raises no inference. *Tortora v General Motors Corp*, 373 Mich 563, 568-569; 130 NW2d 21 (1964).

Following the evidentiary phase of the hearing on October 6, the circuit court rendered an oral opinion, finding the actions of Mrs. Gracey to have voided the affected absentee voter ballots. The court determined, apparently because the court was not convinced that the exact number of improperly delivered ballots could be ascertained and because the number of the identified affected bal-

lots was greater than the difference in vote totals between Gracey and Casazza, that a recasting of all the absentee voter ballots should be conducted forthwith. An order to that effect, rendered final pursuant to the language of MCR 2.604, entered on October 9.

Pursuant to that order, the 315 absentee voters were sent new ballots, with instructions that they be voted and delivered to the city clerk before 5:00 P.M. on October 16. Two hundred sixty-five of the absentee voters then cast new ballots, which were counted and, following a hearing on October 17, that count was granted a judicial imprimatur of correctness. In consequence of discarding the original absentee vote counts and substituting the new vote counts, the court declared Casazza the second-place finisher, beating Gracey by one vote.

Casazza contends that Gracey is guilty of laches, in that three days elapsed between the entry of the circuit court's order of October 17 and the filing of the motion for stay of that order, together with a motion to expedite the appeal, see MCR 7.210(B)(2)(b), and a motion for immediate consideration. However, Gracey had no grounds for seeking expedition of the appellate process prior to the circuit court's action on the reballoting, since, had he prevailed, his appeal would have been moot. Under the unique circumstances of this case, we do not believe that Gracey is guilty of such delay as would make it inequitable to address the substantive issues presented by the motion for stay. *Ferency v Secretary of State, supra,* 409 Mich 599-600.

The Attorney General, on behalf of the Board of State Canvassers, contends that the circuit court lacked jurisdiction, because no recount was ever conducted and certified in accordance with § 890 and § 892. We agree.

The Constitution entrusts to the Legislature the power to make all laws necessary to guarantee the purity of elections, to preserve the secrecy of the ballot, and to guard against abuse of the elective franchise. Const 1963, art 2, § 4. According to the ruling of the circuit court in the litigation between the state and county boards of canvassers in this case, the Board of State Canvassers became the Legislature's duly appointed agency for finally certifying the results of the recount engendered by Casazza's petition. Administratively, the Board of State Canvassers functions within the Office of the Secretary of State, and is part of the executive branch. The judiciary must be careful to respect the principle of separation of powers in these election situations. Const 1963, art 3, § 2.

While the judiciary has traditionally had authority, under the common law, to finally determine the issues raised by a contested election, the jurisdiction of the circuit courts may be limited by the Legislature, Const 1963, art 6, § 13. In § 878 of the Elections Law, the Legislature has provided that, while all judicial remedies respecting any election controversy are preserved, no action other than mandamus shall be entertained which might restrain, enjoin, modify, control or otherwise interfere with the action of the Board of State Canvassers, a board of county canvassers, or any other representative of the Board of State Canvassers. Such action must be instituted only against the Board of State Canvassers.

Thus, both on grounds of statutory limits on its jurisdiction and for the additional reason that no court should assume to interfere with the actions of duly appointed administrative bodies until the administrators arrive at some reviewable decision of finality, *Boggetta v Burroughs Corp,* 368 Mich 600, 603; 118 NW2d 980 (1962), other than to order

the administrators to render a decision if the agency is guilty of unacceptable delay, judicial relief in such situations is limited to acceleration of the administrative process. Judicial review of any substantive questions, on a theory that delay constitutes decision by default, is prohibited. *Atlantic & Gulf Stevedores, Inc v Donovan*, 274 F2d 794, 802 (CA 5, 1960); *Harris v District of Columbia Rental Housing Comm*, 505 A2d 66, 71 (DC App, 1986); *Baldeviso v Thompson*, 54 Hawaii 132; 504 P2d 1217 (1972); Note, *Judicial Acceleration of the Administrative Process: The Right to Relief from Unduly Protracted Proceedings*, 72 Yale L J 574 (1963). Accord: *East Jordan Iron Works v Workers' Compensation Appeal Bd*, 124 Mich App 324; 335 NW2d 23 (1983).

Here, the Wayne County Board of Canvassers was statutorily mandated to complete its recount not later than the twentieth day immediately following the last day for filing counter petitions or the first day that the recount could lawfully begin, pursuant to § 875. Apparently, the Wayne County Board of Canvassers failed to appreciate that it was within the board's power, under § 872, not only to conduct an investigation of alleged fraud or wrongdoing, but also to then act on the evidence amassed and, if the board of county canvassers believed such to be the appropriate disposition, to reject the original return and certify new results based only on those votes canvassed which the board of county canvassers believed were valid, see § 874. Alternatively, under the court order placing control of the recount in the board of state canvassers, the board of county canvassers could certify the accuracy of the raw vote totals in the various categories, machine and absentee ballot, and append to its certification to the Board of State Canvassers a statement of

position or reason as to why some or all of the votes within any category, or for any candidate, should be deducted from the canvass. The Board of State Canvassers would then be in a position to make the final decision, which could thereupon be subjected to judicial review.

We therefore conclude that the Wayne County Board of Canvassers violated a clear legal duty to complete the recount within the time limit of § 875 and that the circuit court therefore erred in denying plaintiff's complaint for mandamus relief.[3]

We do not agree with the contention of counsel for Casazza that the involvement of Gracey's wife so tainted the absentee vote that exhaustion of administrative remedies should not be required. Casazza's position is based on § 764b(3), which provides, generally, that the clerk of a city may appoint the number of assistants necessary to accept delivery of absent voter ballots at any location in the city. No person may be appointed

---

[3] We recognize that, having found that mandamus should have issued from the circuit court, determination of the substantive legal issues is no longer necessary to proper disposition of this case and may be seen as obiter dictum. However, the parties were unanimous in asking this Court to provide substantive guidance, and the director of elections, as representative of the Board of State Canvassers, through the Attorney General, similarly expressly solicited this Court's considered opinion on the interplay of the various provisions of the Elections Law on the record as compiled. We note that an issue otherwise technically moot may nonetheless be adjudicated under the jurisprudence of this state, if it is the type of issue which might otherwise evade timely appellate review.

> Notwithstanding such questions and the issues presented by this record might be considered moot, we deem the case of sufficient importance to warrant our decision, even though it may be in the nature of a declaratory decree. [*Lafayette Dramatic Productions, Inc v Ferentz,* 305 Mich 193, 218; 9 NW 57 (1943). See also *Attorney General v Clinton Co Drain Comm'r,* 91 Mich App 630, 631, n 1; 283 NW2d 815 (1979).]

Also, failure to address these issues prior to the election could lead to an action for a writ of quo warranto, when the overwhelming likelihood—conceded at oral argument—is that Mr. Rumora, who is not a party to this action, will win the election. His derivative rights should not, in fairness, be left in limbo.

as an assistant to accept delivery of absent voter ballots "who is a candidate, or a member of the immediate family of a candidate, appearing on the ballot at that election."

This statute, however, merely limits those who may be designated as assistant clerks to accept delivery of absent voter ballots; Mrs. Gracey did not accept delivery of absent voter ballots on behalf of the clerk, but rather delivered absent voter ballots to the clerk purportedly on behalf of the absentee voters. A clerk's representative accepted delivery of those absent voter ballots from Mrs. Gracey.

Step 5(d) of the instructions in § 764a allows an absent voter to select "any registered elector" to return his or her ballot. Nothing in that section precludes the absent voter from selecting a candidate, or a member of the immediate family of a candidate, as the agent for delivery of the ballot to the clerk.

In this respect, it must be noted that it is not at all clear that there is anything wrong with any of the maximum of seventeen challenged ballots. There is not a scintilla of evidence to suggest that Mrs. Gracey tampered with them in any way. It is an established principle of Michigan jurisprudence that those provisions of an election statute which affect the time and place of the election and the legal qualifications of the electors are of the substance of the election, whereas those touching only the recording and returning of the legal votes received and the mode and manner of conducting the details of the election are directory. Irregularities not tending to affect results are not to defeat the will of the majority, which is to be respected, even when irregularly expressed. The officers of election may be liable to punishment for a violation of the directory provisions of a statute, yet the

people are not to suffer on account of the default of their agents. *Lindstrom v Bd of Canvassers,* 94 Mich 467, 470; 54 NW 280 (1892), quoting McCrary on Elections, § 193; *Groesbeck v Bd of State Canvassers,* 251 Mich 286; 232 NW 387 (1930).

A timely cast absentee voter ballot is not to be invalidated solely because the delivery to the clerk was not in compliance with § 764a or § 764b, although such ballot shall be deemed to be challenged and shall be marked and processed as provided in § 745. § 764b(4). Although Mrs. Gracey's violation of § 764a—assuming *arguendo* that she did not provide the certification required in Step 5(d)[4]—was improper, no claim is made, nor has evidence been adduced, suggesting that she opened the envelopes containing the ballots, made any markings on the ballots, altered the ballots in any way, substituted different ballots for those given to her for delivery, or influenced the voters in their voting of the ballots. Without proof that Mrs. Gracey's actions affected the results of the election, her violation should not disenfranchise the ballots of the absentee voters who entrusted their ballots to her.[5]

---

[4] Section 764a provides in pertinent part:

In the event a voter cannot return the ballot in any of the above methods, the voter may select any registered elector to return the ballot. The person returning the ballot must sign and return the following certificate to the clerk at the time of delivery of the ballot:

I certify that my name is _____ and my address is _____; that I am delivering the ballot of _____ at his/her request; that I did not solicit or request to return the ballot; that I have not opened the envelope containing the ballot; have not made any markings on the ballot; have not altered the ballot in any way; have not substituted another ballot given to me for delivery; have not influenced the voter in the voting of the ballot and am aware that a false statement in this certificate is a violation of the Michigan election law.

[5] While we agree with the city clerk that he is not solely at fault in this case, we note that, had employees of the clerk's office been instructed concerning the requirements of the Elections Law, the

Further, we are disturbed by an apparent loophole in § 764a. Had Mrs. Gracey simply mailed the absent voter ballots that had been handed to her, she would not have been required to provide the certification set forth in Step 5 of the instruction in § 764a. It would seem that the Legislature is unconcerned with ballots which are returned by mail, although these are equally subject to tampering, albeit without the safeguard that the person making the delivery must be identified and provide a certification. We respectfully call the attention of the Legislature to this apparent omission. We suggest that a better method of assuring the purity of elections would be to statutorily provide that the envelope in which an absent voter's ballot must be sealed should always have a space in which the voter indicates to whom the ballot was given for delivery, by mail or in person, and a requirement that the person depositing the ballot in the mail, or making delivery, provide the certification required pursuant to the instructions in § 764a. For that matter, we also see merit in the suggestion, made by counsel for Casazza, that § 764b(3) should include, among those deemed disqualified for appointment as assistants to the clerk for the acceptance of delivery of absent voter ballots, not only candidates and members of the immediate family of the candidate, but campaign workers as well.

We recognize that the county or state boards of canvassers, prior to certifying, may determine that there is new evidence which would support a finding that the absentee ballots were tampered

impropriety precipitating this case simply would not have occurred. We therefore encourage election officials and their legal advisors to convey to their subordinates the proper methods for handling their election responsibilities and the importance of compliance. The will of the electorate should be determined at the ballot box, not in the courtroom.

with, are fraudulent, or for some other reason should be voided. The question then becomes: Is there an alternative proper course of action, given the fact that the number of voided ballots exceeds the difference in vote totals between the second and third finishers in the primary election, one of whom will be certified as a candidate for the general election? The remaining 1,772 electors should not be deprived of the result of their votes by the mistake of the election officers. *People ex rel Prosecuting Attorney of Oceana County v Avery,* 102 Mich 572;. 61 NW 4 (1894). Here the actions of Mrs. Gracey, for present purposes, were based at least in part on erroneous information, assistance, or instructions she received from the Office of the City Clerk of the City of Grosse Pointe Farms. *Avery, supra.* We suggest that where the number of absentee ballots to be voided is ascertainable, as appears to be the case here, the solution to this dilemma is found in *Attorney General ex rel Miller v Miller,* 266 Mich 127, 147-150; 253 NW 241 (1934).

Counsel for Casazza rejected application of *Attorney General ex rel Miller* outright, and noted that, in his view, application of the proportionate reduction doctrine would be no remedy at all, because the relative positions of the candidates would always remain the same, simply being fractionally reduced. We think this represents a misunderstanding of the proportionate deduction procedure. The proportionate deduction procedure should be applied to that portion of the votes affected by the challenge. Here, all parties accept the validity of the original canvass of the machine ballot. Only the absent voter "precinct" is questioned.

Within the absent voter precinct, as originally canvassed, Gracey received 93 of 315 votes, or 29.5

percent. Casazza received only 29 of 315 absentee votes, or 9.2 percent. Each reduction in absent votes thus affects Gracey's totals three times as much as the totals for Casazza.

Here, there are a maximum 17 challenged absentee voter ballots, of a total of 315. Deducting $17/315$ of the absentee votes received by each candidate, as originally certified, from the total vote for each candidate, the following deductions, to two decimals, result:

| Candidate | Votes to be Subtracted | New Total |
|-----------|------------------------|-----------|
| Rumora    | 9.93                   | 1,024     |
| Gracey    | 5.01                   | 303       |
| Casazza   | 1.56                   | 296       |
| Roosen    | .48                    | 149       |
|           |                        | 1,772     |

Thus, where, the number of irregular votes is ascertainable, and is less than a majority cast, it is apparent that the proportionate deduction method is appropriately applied, rather than voiding the entire absentee voter portion of the election, as the circuit court directed in its order of October 9.

At the conclusion of oral argument, we announced our decision and provided a written order, dated October 25, 1989, which we reproduce here:

The Court orders:

1. The motions by plaintiff-counter defendant-appellant for immediate consideration and to expedite the appeal are granted.

2. The motions by intervening defendant-counter plaintiff-appellee to affirm the Wayne County Circuit Court's orders in this cause of October 9 and October 17, 1989 are denied.

3. The motions by plaintiff-counter defendant-appellant for peremptory reversal of the Wayne County Circuit Court's orders in this cause of October 9 and October 17, 1989 are granted. Pur-

suant to MCR 7.216(A)(7) and (9), the complaint for mandamus is granted.

4. The Wayne County Board of Canvassers is mandated to certify to the State Board of Canvassers, not later than noon on October 26, 1989, the results of the primary election in the City of Grosse Pointe Farms for the office of municipal judge. In making this certification, the Wayne County Board of Canvassers shall indicate the raw vote totals for each candidate, by machine and by absentee ballot separately, and then the vote total for each candidate of votes which, in the opinion of the Wayne County Board of Canvassers, are legal votes, and the votes which are illegal and which should therefore not be counted. The Wayne County Board of Canvassers may submit a statement of reasons or position in conjunction with its certification.

5. The State Board of Canvassers is mandated to certify, not later than noon on October 27, 1989, the results of the primary election in the City of Grosse Pointe Farms for the office of municipal judge. In making this certification, the State Board of Canvassers shall indicate the raw vote totals for each candidate, by machine and absentee ballot separately, and then the vote total for each candidate of votes which, in the opinion of the State Board of Canvassers, are legal votes, and the votes which are illegal and which should therefore not be counted. The State Board of Canvassers may submit a statement of reasons or position in conjunction with its certification.

6. The clerk of the City of Grosse Pointe Farms shall thereupon forthwith act upon the primary election results as certified by the State Board of Canvassers, whatever that certification may be, and, as necessary, prepare and distribute new ballots and recall incorrect ballots or continue the distribution of existing ballots.

7. Paragraph 6 of this order is without prejudice to the right of any party to seek appropriate judicial relief or review of the action of the State Board of Canvassers.

8. No costs are awarded, a public question being involved.

9. The court will provide the parties with a written opinion in support of this order as soon as possible. *American Independent Party v Secretary of State,* 397 Mich 689, 692 (1976).

10. The Court has considered favorably waiving fees, but finds that it can do so only in cases of indigency. MCR 2.002.

11. This Court retains no further jurisdiction.

In light of the fact that this Court has previously entered its order disposing of the case before this Court, pursuant to MCR 7.215(F)(2), this opinion shall have immediate effect.