*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANNETTE MARIE BARNETT,

       Plaintiff-Appellant,

v

GEORGE HENRY THOMAS BARNETT,

       Defendant-Appellee.

UNPUBLISHED
April 28, 2022

No. 354668
Macomb Circuit Court
LC No. 2018-003920-DM

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

The parties agreed to submit their divorce action to arbitration. After the arbitrator issued an award, plaintiff moved to vacate the award on multiple grounds. The trial court denied plaintiff's motion and later entered a judgment of divorce, consistent with the arbitrator's decision. Plaintiff, proceeding *in propria persona*, appeals as of right. We affirm.

## I. BACKGROUND

The parties were married in 1995 and plaintiff filed a complaint for divorce in 2018. The only child of the marriage was 17 years old when plaintiff initiated this action. On the date scheduled for trial, the parties agreed to instead refer the matter to binding arbitration, pursuant to the domestic relations arbitration act ("DRAA"), MCL 600.5070 *et seq*., and MCR 3.602, to resolve the following issues: (1) the breakdown of the marriage, (2) spousal support, (3) property division, (4) "child support/care/medical," and (5) attorney fees, costs, and expenses.

The arbitrator issued a written decision resolving the disputed issues. Because the minor child had reached the age of majority, no custody award was entered. Defendant was ordered to pay continued child support to plaintiff until the child's expected graduation from high school. Given the length of the marriage, the parties' income disparity, the parties' health, and other relevant factors, the arbitrator awarded plaintiff permanent spousal support of $2,500 a month, effective upon the sale of the marital home, until the death of either party or until plaintiff remarried.

-1-

The arbitrator determined that the parties would bear their own attorney and expert fees, and that the marital home would be sold and the proceeds divided equally, subject to an offset for plaintiff's share of defendant's business interests. Defendant's 401(k) account, with a value of $84,000, was divided equally. The contents of the marital home were awarded to plaintiff except for small items discussed below. Plaintiff's credit union account, valued at approximately $100,000, was divided equally. The arbitrator awarded the entirety of a Bank of America account, containing approximately $180,000 that plaintiff had received from a personal injury lawsuit, to plaintiff. Plaintiff was held responsible for approximately $40,000 in unsecured debt, and defendant, who owed approximately twice that amount, was held solely responsible for his debt.

A principal issue was the valuation and distribution of defendant's interests in two businesses. The trial court appointed an expert, John Alfonsi, to conduct a forensic investigation of defendant's businesses to determine if defendant was hiding assets. The arbitrator addressed defendant's business interests as follows:

> 5. Both parties had Defendant's business interests evaluated and were of similar value. The median of both appraisals is $370,000.00. The court also appointed John Alfonsi to determine if the Defendant secreted any assets and ordered Plaintiff to pay his fees in the event none were found. This document was reviewed by this arbitrator and this arbitrator found no definitive proof or conclusion of fraud or hidden assets. As such, Plaintiff shall be responsible for Mr. Alfonsi's fees and this arbitrator shall use the median of both parties' business evaluations which was, as aforesaid, $370,000.00. Accordingly, Defendant is awarded any and all interests in his businesses, Statewide Grinding & International Abrasives. Defendant is awarded all assets of said businesses free and clear of any claim of the Plaintiff and assumes any debts or obligations of same, including MESC and business liabilities, and shall hold Plaintiff harmless from same. For Plaintiff's share of the businesses, Defendant shall pay to her $185,000.00. This amount shall come from his share of the marital home sale. If the home proceeds exceed $370,000.00, Plaintiff shall be awarded same free and clear of any claim of the Defendant. However, if Defendant's 50% share of the home proceeds are less than $185,000, he shall pay to Plaintiff the difference within 60 days of the home sale closing.

Before a judgment of divorce was entered, plaintiff moved to vacate the arbitration award under MCL 600.5081(2), on the grounds that (1) the arbitrator refused to hear material evidence, (2) Alfonsi's forensic evaluation report was not made available to the parties until shortly before the arbitration hearing and the arbitrator denied plaintiff's request to adjourn the hearing, (3) the arbitrator denied plaintiff's request to adjourn the hearing to consider 2019 accounting records for defendant's two businesses, which had been valued only on the basis of records from 2017 and 2018, and (4) the arbitrator refused to consider that the parties' 19-year-old child was disabled and cared for by plaintiff, and likely would need an adult's care for the remainder of his life.

In response, defendant argued that there were no grounds to vacate the award. Defendant asserted that Alfonsi found no evidence of hiding or disposing of assets, and although the parties did not receive Alfonsi's report until the day of the arbitration hearing, the attorneys were in contact with Alfonsi on a regular basis before the hearing. After hearing arguments regarding a

minor accounting issue addressed by Alfonsi, the arbitrator concluded that the issue was not significant and that Alfonsi did not find any evidence of fraud regarding the assets. For that reason, the arbitrator proceeded with the arbitration. Defendant also asserted that plaintiff was not entitled to vacate the arbitration award based on the absence of the 2019 corporate records given that the experts completed their assessments using information previously available, and that plaintiff's request to consider the 2019 records was just a ploy to extend and delay the arbitration process. As for spousal support, defendant denied that the arbitrator refused to hear evidence on that subject and argued that the issue was thoroughly discussed and the guidelines were reviewed. With regard to the parties' son, defendant argued that there was no law that would allow for the continuing care of an adult child or to award additional money for spousal support on this basis.

Following a hearing, the trial court found no grounds to vacate the arbitrator's decision and denied plaintiff's motion. The parties then agreed to the terms of a divorce judgment consistent with the arbitrator's decision. This appeal followed.[1]

## II. ANALYSIS OF PLAINTIFF'S ISSUES

Preliminarily, we note that plaintiff's pro se brief lists 11 issues in her Statement of Questions Presented, but the body of her brief does not separately address these 11 stated issues. Rather, her arguments are scattered throughout her brief, making it difficult to identify and associate her arguments with each stated issue. We have focused our analysis on the various issues listed in plaintiff's Statement of Questions Presented and have endeavored to discern plaintiff's specific arguments associated with each issue.[2]

Plaintiff first argues that she did not voluntarily agree to arbitration, was never informed how the process worked, and did not understand that the arbitrator's decision would be final, subject to only limited grounds for correcting or modifying the arbitrator's award. Plaintiff did not challenge the validity of the arbitration agreement at any time before the arbitration award was issued, and did not contest the validity of the arbitration agreement on these or any other grounds in her motion to vacate the arbitration award. Accordingly, this issue is unpreserved, *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020), and our review is for plain

---

[1] After the divorce judgment was entered and plaintiff filed her claim of appeal, both parties filed motions to enforce various terms of the judgment. Although a party who files an appeal of right from a final order may raise issues related to other orders in the case, *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992), the party may not challenge subsequent orders entered after the claim of appeal has been filed, see *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193, 197; 452 NW2d 471 (1989). Therefore, this Court's jurisdiction in this appeal is limited to the judgment of divorce and any earlier orders, and does not extend to postjudgment matters.

[2] Plaintiff has submitted additional materials that are not part of the lower court record. Because this Court's review is limited to the trial court record, *In re Rudell Estate*, 286 Mich App 391, 405; 780 NW2d 884 (2009), and enlargement of the record on appeal is not permitted, *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 146; 809 NW2d 444 (2011), we do not consider these additional materials.

error affecting plaintiff's substantial rights, *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). The record does not support this claim of error.

The parties entered into a written agreement pursuant to MCL 600.5071 of the DRAA, which permits parties to a divorce action to "stipulate to binding arbitration" by signing an agreement that specifically provides for an award with respect to specified issues. Under MCL 600.5072(1), a party may not be ordered to participate in binding arbitration unless the party acknowledges, in writing or on the record, that the party was informed of and understands various rights, requirements, and conditions of binding arbitration.

Because arbitration proceedings are not as formal as a trial, the parties' agreement determines the issues to be addressed at the arbitration hearing. As explained in *Miller v Miller*, 474 Mich 27, 32-35; 707 NW2d 341 (2005):

> Rather than employ the formality required in courts, parties in arbitration are able to shape the parameters and procedures of the proceeding. The DRAA requires that they first sign an agreement for binding arbitration delineating the powers and duties of the arbitrator. MCL 600.5072(1)(e).

> The act also contemplates that the parties will discuss with the arbitrator the scope of the issues and how information necessary for their resolution will be produced. MCL 600.5076. The act contemplates that the parties will decide what is best for their case. Nowhere in the DRAA are procedural formalities imposed that restrict this freedom.

> This Court has consistently held that arbitration is a matter of contract. "It is the agreement that dictates the authority of the arbitrators[.]" *Rowry v Univ of Michigan*, 441 Mich 1, 10; 490 NW2d 305 (1992). In this case, the Court of Appeals decision infringes on the parties' recognized freedom to contract for binding arbitration.

> * * *

> As we noted earlier, the DRAA requires a written arbitration agreement setting out the subject of the arbitration and the arbitrator's powers. MCL 600.5071 and MCL 600.5072(1)(e). Here, the parties entered into a written agreement satisfying these requirements when they stipulated to entry of the particularized order for binding arbitration that the court in due course entered.

> The order lists the issues for arbitration. It clearly delineates the arbitrator's powers and duties. Accordingly, it is sufficient to satisfy the requirements of MCL 600.5071 and MCL 600.5072(1)(e).

> Nothing in the DRAA mandates that there be an agreement separate from the stipulated order. This is consistent with the informal and sometimes unorthodox nature of arbitration. [*Detroit Automobile Inter-Ins Exch* v] *Gavin*, [416 Mich 407, 429; 331 NW2d 418 (1982)]. As long as the parties agree to some document that

meets the minimal requirements of MCL 600.5071 and MCL 600.5072(1)(e), the agreement is sufficient. [First alteration in original.]

Plaintiff signed a written stipulation to submit her divorce case to binding arbitration, which identified the issues to be arbitrated. Although plaintiff asserts that she did not voluntarily agree to arbitration, denies that she was informed of the contents of the arbitration agreement, and claims that she suffers from a reading comprehension problem that prevented her from understanding the agreement, the written stipulation that she signed states, "We, the parties in this case, acknowledge receiving the information in MCL 600.5072(1) and consent to both binding arbitration and the entry of this order." Plaintiff also signed the order referring the case to arbitration, which states that plaintiff executed an acknowledgment of domestic relations information. The acknowledgment form that plaintiff signed is separate from the agreement itself. By signing that form, plaintiff acknowledged that she was informed of and understood the various conditions associated with arbitration as specified under MCL 500.5072(1). In particular, the form contains plaintiff's acknowledgment that she was informed of and understood, among other things, that arbitration is voluntary, that the arbitrator had the power to decide each issue assigned to him under the arbitration agreement and the court would enforce the arbitrator's decision on those issues, that arbitration is binding and the right to appeal is limited, that she should consult with an attorney before entering into an arbitration agreement, and that she was entitled to be represented by counsel throughout the arbitration process.

Although plaintiff asserts that the arbitrator pressured her to sign the agreement, the arbitration agreement was signed before the parties met with the arbitrator. Moreover, plaintiff was represented by counsel and she acknowledged being informed that she should consult with her attorney before entering into the arbitration agreement. The documents signed by plaintiff complied with the requirements of MCL 600.5071 and MCL 600.5072. It was up to plaintiff's counsel, not the arbitrator, to explain any parts of the agreement or the arbitration process that plaintiff could not read or did not understand.

In sum, the record does not support plaintiff's claim that she did not voluntarily or understandably agree to binding arbitration. Plaintiff's written acknowledgments indicate that she voluntarily agreed to participate in arbitration, and that she was informed of and understood the requirements specified in MCL 600.5072(1).

Next, in a series of related arguments, plaintiff challenges the arbitrator's disposition of her Bank of America and credit union accounts, and the arbitrator's awards of child support and spousal support. The arbitrator determined that both bank accounts were marital assets, but it awarded the entirety of the Bank of America account to plaintiff because she did not receive any contribution from defendant for her attorney or expert fees. However, the arbitrator ordered that the credit union account was to be equally divided between the parties. Plaintiff seeks relief from the arbitrator's decision to equally divide the credit union account. She argues that considerations related to child support and spousal support weighed in favor of awarding her the entire value of this account. She also suggests that the arbitrator erred by treating both accounts as marital assets.

Although plaintiff argued in her motion to vacate the arbitration award that the arbitrator failed to give due consideration to the special needs of her adult son, asserting this evidence justified an increased award of spousal support, she did not argue that the arbitrator erred by

treating the Bank of America and credit union accounts as marital assets. Therefore, our review of this latter issue is limited to plain error affecting plaintiff's substantial rights. *Demski*, 309 Mich App at 426-427. Moreover, review of these issues is also subject to the limitations on review of an arbitrator's decision. In *Washington v Washington*, 283 Mich App 667, 671-673; 770 NW2d 908 (2009), this Court explained:

> Judicial review of arbitration awards is usually extremely limited, *Konal v Forlini*, 235 Mich App 69, 74; 596 NW2d 630 (1999), and that certainly is the case with respect to domestic relations arbitration awards. Through MCL 600.5081(2), the Michigan Legislature has provided four very limited circumstances under which a reviewing court may vacate a domestic relations arbitration award:
>
> > (a) The award was procured by corruption, fraud, or other undue means.
> >
> > (b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.
> >
> > (c) The arbitrator exceeded his or her powers.
> >
> > (d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.
>
> MCL 600.5081(2)(c), "the arbitrator exceeded his or her powers" provision, is the codification of a phrase used for many years in common-law and statutory arbitrations. Indeed, our Court has repeatedly stated that "arbitrators have exceeded their powers whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Dohanyos v Detrex Corp (After Remand)*, 217 Mich App 171, 176; 550 NW2d 608 (1996); see also *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005), and *Krist v Krist*, 246 Mich App 59, 62; 631 NW2d 53 (2001). Pursuant to MCL 600.5081(2)(c), then, a party seeking to prove that a domestic relations arbitrator exceeded his or her authority must show that the arbitrator either (1) acted beyond the material terms of the arbitration agreement or (2) acted contrary to controlling law.
>
> Whether an arbitrator exceeded his or her authority is also reviewed de novo. *Miller*, *supra* at 30. A reviewing court may not review the arbitrator's findings of fact, *Detroit Automobile Inter-Ins Exch v Gavin*, 416 Mich 407, 429; 331 NW2d 418 (1982); *Krist*, *supra* at 67, and any error of law must be discernible on the face of the award itself, *Gavin*, *supra* at 428-429. By "on its face" we mean that only a legal error "that is evident without scrutiny of intermediate mental indicia," *id*. at 429, will suffice to overturn an arbitration award. Courts will not engage in a review of an "arbitrator's 'mental path leading to [the] award.'" *Krist*,

*supra* at 67, quoting *Gavin*, *supra* at 429. Finally, in order to vacate an arbitration award, any error of law must be "so substantial that, but for the error, the award would have been substantially different." *Collins v Blue Cross Blue Shield of Michigan*, 228 Mich App 560, 567; 579 NW2d 435 (1998), citing *Gordon Sel-Way v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991). [Alteration in original.]

Plaintiff asserts that she opened the Bank of America and credit union accounts in 2017 to provide for her son's future needs as part of her estate plan.[3] Plaintiff appears to argue that because these accounts were intended for her son's benefit, the arbitrator erred by treating them as marital property. Plaintiff further asserts that, although her son reached the age of majority while this case was pending, he has special needs and will likely require assistance throughout his life, which should have justified increased awards of spousal or child support.

On the issue of child support, the arbitrator ruled that because the parties' son was still attending high school at the time of the arbitration hearing, defendant would be required to continue to pay child support to plaintiff, but only until June 2020, when the child was expected to graduate from high school. Because the parties' son was no longer a minor, the arbitrator did not commit an error of law by refusing to award child support beyond the date of his anticipated high school graduation. Child support for children who have reached the age of majority is very limited. MCL 552.605b(2) recognizes that support may be awarded for a child who has reached 18 years of age if the child is attending high school, resides full time with the parent receiving support, and the child has not yet reached the age of 19 years and 6 months. See *Weaver v Giffels*, 317 Mich App 671, 679-681; 895 NW2d 555 (2016). The arbitrator's award of continuing child support was consistent with MCL 552.605b(2). Therefore, plaintiff has not shown that the arbitrator committed an error of law apparent on the face of the arbitration award with respect to child support.

When reviewing issues related to spousal support, this Court has recognized that financial support of adult children may be considered in determining the amount of support to award. See *Andrusz v Andrusz*, 320 Mich App 445, 456-460; 904 NW2d 636 (2017). However, an award of spousal support involves a discretionary ruling by the fact-finder. See *Weaver*, 317 Mich App at 678. The arbitrator awarded plaintiff permanent spousal support of $2,500 a month once the marital home was sold, subject to modification by the court for proper cause or a change of circumstances. Although plaintiff complains that the amount awarded is insufficient given her child's special needs, review of this issue would involve weighing the evidence offered at the arbitration hearing, and a reviewing court may not review the arbitrator's findings of fact or attempt to discern an arbitrator's "mental path leading to the award." *Washington*, 283 Mich App at 672 (citation and alteration omitted). Plaintiff has not shown an error of law discernable on the face of the award. *Id*.

---

[3] According to the bank records, the accounts were opened in the name of plaintiff's living trust. However, plaintiff had unrestricted access to the account funds.

Plaintiff complains that the arbitrator did not record the portion of the arbitration hearing involving future support for her child. MCL 600.5077 provides:

> (1) Except as provided by this section, court rule, or the arbitration agreement, a record shall not be made of an arbitration hearing under this chapter. If a record is not required, an arbitrator may make a record to be used only by the arbitrator to aid in reaching the decision. The parties may provide in the arbitration agreement that a record be made of those portions of a hearing related to 1 or more issues subject to arbitration.

> (2) A record shall be made of that portion of a hearing that concerns child support, custody, or parenting time in the same manner required by the Michigan court rules for the record of a witness's testimony in a deposition.

Under this statute, absent an agreement by the parties, the arbitrator was only required to make a record of the portion of the hearing that concerned child support, custody, or parenting time. The record does not reflect that the parties agreed to make a record of any portion of the arbitration hearing. Because the child was no longer a minor at the time of the arbitration hearing, custody and parenting time were no longer at issue. However, child support remained an issue and there is no indication that a record was made of this part of the hearing. But because plaintiff did not raise this issue as a ground for vacating the arbitration award, she must show a plain error that affected her substantial rights. *Demski*, 309 Mich App at 426-427.

The parties' arbitration agreement identified "child support/care/medical" as one of the issues to be referred to arbitration. Assuming that the failure to record this portion of the hearing qualifies as plain error, plaintiff has not shown that the error affected her substantial rights. The parties' son was no longer a minor at the time of the arbitration hearing in February 2020, and, although the arbitrator ordered child support, it was to continue only until June 2020, when the child graduated from high school. Plaintiff's complaint relates to the arbitrator's failure to award future child support, but because the child had reached the age of 18, the arbitrator was only permitted to award child support until the child graduated from high school, and in no case after he reached 19 years and 6 months of age. MCL 552.605b(2). Because the arbitrator's award of child support was consistent with these requirements, any failure to make a record of the portion of the arbitration hearing related to child support did not affect plaintiff's substantial rights. An arbitrator's decision may be vacated on procedural grounds only when the hearing was conducted "to prejudice substantially a party's rights." MCL 600.5081(2)(d).

To the extent that plaintiff complains that a record was not made of the portion of the arbitration hearing related to spousal support, there is no indication that the parties agreed to record that portion of the hearing. The portion of an arbitration hearing involving spousal support is not required to be recorded under MCL 600.5077(2). Therefore, plaintiff has not demonstrated that the failure to record this portion of the hearing qualifies as error, plain or otherwise.

Plaintiff also appears to argue that the arbitrator erred by failing to award her the Bank of America and credit union accounts as her personal property. As noted, the arbitrator awarded plaintiff the entirety of the Bank of America account, but recognized that defendant would have a claim to some of those funds even though plaintiff received that money in a personal injury lawsuit.

-8-

Thus, this account was treated as a marital asset, subject to distribution as part of the marital estate. Conversely, the arbitrator ruled that the $100,000 in the credit union account would be divided equally between the parties.

The first consideration when dividing property in divorce proceedings is the determination of marital and separate assets. *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). Marital assets are those that came "to either party by reason of the marriage . . . ." MCL 552.19. "Generally, marital assets are subject to being divided between the parties, but separate assets may not be invaded." *Woodington v Shokoohi*, 288 Mich App 352, 358;792 NW2d 63 (2010). Whether a particular asset qualifies as marital or separate property is a question of fact. *Id.* at 357.

Plaintiff's intent that these accounts be used for her son's benefit does not foreclose a finding that the accounts were marital assets. Although plaintiff refers to these accounts as trust accounts for her son, she does not identify any evidence indicating that she or defendant relinquished control over the funds. Moreover, this Court may not review the arbitrator's findings of fact regarding whether a particular asset qualifies as marital or separate property. *Washington*, 283 Mich App 671-673. It is not apparent from the face of the arbitrator's award that the arbitrator erred by treating the accounts as marital assets, subject to distribution as part of the marital estate. Accordingly, plaintiff has not shown any plain error with regard to the treatment of these assets. *Demski*, 309 Mich App at 426-427.

Next, plaintiff appears to argue that the arbitrator erred by accepting or agreeing with defendant's evidence related to the values of the two businesses. Plaintiff further claims that the arbitrator erred by refusing to hear evidence on this issue. We perceive no error.

The arbitrator found that the parties had submitted similar valuations of defendant's businesses. Rather than relying on just one party's valuation evidence, the arbitrator adopted the median value of the parties' respective valuations. Because the arbitrator explicitly stated that he considered both parties' valuations, the record does not support plaintiff's claim that the arbitrator refused to consider her evidence.

Plaintiff asserted throughout this litigation that she believed that defendant was hiding assets through his businesses. Alfonsi was appointed as an expert by the trial court to conduct a forensic review of the businesses' records to determine if there was any evidence to support plaintiff's claim. Plaintiff concedes that Alfonsi found no evidence of fraud or that assets were missing or being hidden. To the extent that plaintiff complains that her evidence related to this issue was not considered by the arbitrator, plaintiff has not demonstrated that she is entitled to relief. It was within the arbitrator's discretion to limit the evidence or testimony offered at the hearing where it had the benefit of an independent examiner's report, and that decision is not subject to review. See *Washington*, 283 Mich App at 675-676.

Plaintiff seems to suggest that the arbitrator showed partiality for defendant when ruling on this issue. Evident partiality by an arbitrator that prejudices a party's rights is a ground for vacating an arbitrator's award. MCL 600.5081(2)(b). In support of this argument, plaintiff asserts that the arbitrator chose to rely on defendant's expert and his valuation evidence. But as explained earlier, the arbitrator considered the analyses from both parties' experts and adopted the median value for determining the values of both businesses. The face of the arbitration award does not

support plaintiff's argument that the arbitrator did not consider her evidence or showed partiality to defendant in determining the values of the businesses.

To the extent that plaintiff complains that she was not allowed to present additional evidence, this again was a matter within the discretion of the arbitrator. In her motion to vacate the award, plaintiff argued that the arbitrator did not adjourn the hearing to enable her to offer 2019 financial records for the two businesses. However, the parties' valuation experts had already submitted their valuations based on financial records from 2017 and 2018. The arbitration hearing was held in February 2020, and the arbitrator noted that the parties had three months to prepare for it. Both parties had evaluations prepared by their experts and those reports were provided to the arbitrator. Plaintiff argues that the arbitrator should have adjourned the hearing to allow the experts to incorporate the financial data from 2019. A party may obtain relief from an arbitration award for refusal to adjourn a hearing if the arbitrator "refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights." See MCL 600.5081(2)(d). Considering that both parties were permitted to submit expert valuations and that both valuations were similarly based on the businesses' 2017 and 2018 financial records, plaintiff has not demonstrated that there was sufficient cause to postpone the hearing merely to investigate the 2019 records, particularly when this matter had been pending for approximately two years.

Plaintiff also argues that the arbitrator erred by refusing to adjourn the arbitration hearing to allow the parties additional time to review the report prepared by Alfonsi regarding his forensic evaluation of defendant's companies. Alfonsi was directed to determine whether defendant was hiding assets associated with his companies.

Plaintiff has not shown that the trial court erred by failing to vacate the arbitrator's award for refusal to adjourn the arbitration hearing on this ground. Although the parties did not receive Alfonsi's report until the day of the arbitration hearing, the arbitrator gave the parties time to review the report. Notably, Alfonsi did not find any evidence of fraud or hidden assets, so his report was not deemed material to the arbitrator's decisions regarding the distribution of the marital estate. Plaintiff does not explain why an adjournment was necessary to consider the information in Alfonsi's report, or why more time was necessary. Further, contrary to what plaintiff asserts, the arbitrator did not refuse to consider Alfonsi's report, but rather determined that it failed to provide information that would impact an equitable distribution of the marital estate. Thus, plaintiff has not demonstrated that there was sufficient cause to grant the adjournment, or that the arbitrator refused to hear material evidence. MCL 600.5081(2)(d). Accordingly, the trial court did not err by denying plaintiff's motion to vacate the arbitration award with respect to this issue.

Next, plaintiff argues that the arbitrator's award should be vacated because the arbitrator was biased against her. Plaintiff did not move to vacate the arbitrator's award on this basis in the trial court. Therefore, this issue is unpreserved and is reviewed only for plain error affecting plaintiff's substantial rights. *Demski*, 309 Mich App at 426-427.

In support of this issue, plaintiff relies on alleged statements by defendant and the arbitrator that are not apparent from the record. She also asserts that defendant had access to Alfonsi's report one day before the arbitration hearing, whereas she did not receive the report until the day of the hearing. Plaintiff also complains that the arbitrator stated that there was no conclusive evidence

of fraud or hidden assets when, according to plaintiff, Alfonsi's report was incomplete because more information was needed.

Under MCL 600.5081(2)(b), an arbitration award may be vacated in a domestic relations matter if there is "evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights." This language is identical to that found in MCR 3.602(J)(2)(b), which applies to arbitration proceedings in other civil matters. In *Belen v Allstate Ins Co*, 173 Mich App 641, 645; 434 NW2d 203 (1988), this Court explained the type of conduct necessary to show that an arbitrator was biased under MCR 3.602(J)(2)(b):

> Partiality or bias which will allow a court to overturn an arbitration award must be certain and direct, not remote, uncertain or speculative. *Kauffman v Haas*, 113 Mich App 816; 318 NW2d 572 (1982). MCR 3.602(J)(1)(b), by its own terms, indicates a degree of partiality that is readily observable. Moreover, the court rule does not require that the arbitrators give equal credence to all testimony. Indeed, the arbitrators must remain free to reject any testimony or arguments that they find unpersuasive. Here, there may have been a multitude of reasons supporting the neutral arbitrator's decision. The neutral arbitrator may have found plaintiff's testimony lacking in credibility. Absent certain and direct evidence of partiality, we cannot conclude that there was a showing sufficient to vacate the arbitration award.[4]

Nothing on the face of the arbitration award suggests that the arbitrator was biased. Instead, plaintiff relies on her own recollection of the proceedings and conversations with defendant to assert her belief that the arbitrator favored defendant. Like in *Belen*, plaintiff has not identified any certain and direct evidence to support of her claim. Plaintiff also asserts that the arbitrator's partiality is evident from his rulings, but an unfavorable ruling alone does not prove bias. See *Cain v Dep't of Corrections*, 451 Mich 470, 495-496; 548 NW2d 210 (1996). Accordingly, no grounds exist to vacate the arbitrator's decision due to evident partiality or bias.

Plaintiff also argues that the arbitrator erred by including property owned by third parties in the division of the marital estate. Because plaintiff did not raise this issue in her motion to vacate the arbitrator's award, it is unpreserved and review is limited to plain error affecting plaintiff's substantial rights. *Demski*, 309 Mich App at 426-427.

In support of this argument, plaintiff states that her mother made contributions to the Bank of America and/or credit union accounts, and that her mother loaned the parties money when they purchased a house. Plaintiff appears to claim that any contributions by her mother should not have been included in the marital estate. The arbitration award does not address the disposition of any funds that were not held in the parties' bank or credit union accounts. As explained earlier, the arbitrator determined that the Bank of America and credit union accounts were marital assets, and

---

[4] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

the arbitrator's factual findings related to that issue are not subject to judicial review. *Eppel v Eppel*, 322 Mich App 562, 572; 912 NW2d 584 (2018). Moreover, although plaintiff repeatedly refers to the bank accounts as trust accounts for her son, plaintiff continued to have unrestricted access to the account funds, belying that the funds were held in trust. Indeed, plaintiff concedes that she used these accounts to pay other expenses and to make contributions. It is not evident that the arbitrator committed an error of law by treating the account funds as marital property, subject to distribution as part of the marital estate.

Plaintiff also seems to suggest that a laptop computer awarded to defendant actually belonged to their son. The arbitration agreement provides that the parties agreed to submit the division of property to arbitration. Again, the resolution of factual issues was the responsibility of the arbitrator and plaintiff cannot challenge the arbitrator's factual finding regarding this issue.

In sum, it is not apparent from the face of the arbitration award that the arbitrator exceeded his authority by awarding property that did not belong to the parties. Plaintiff has not met her burden of showing a plain error.

Plaintiff also argues that there was alleged corruption by the arbitrator, or he exceeded his authority, when he named Alex Lucido as the realtor who would sell the parties' marital home. Plaintiff complains that she did not have any input into the selection of a realtor, that the arbitrator had a personal relationship with Lucido, and had made multiple prior referrals to him. A court is permitted to vacate an arbitration award on the basis of corruption when the "award was procured by corruption." MCL 600.5081(2)(a). Because neither party wished to retain the marital home, a realtor's services were required. The arbitrator had the authority to decide the terms of the sale as part of the division of the marital property, including the selection of a realtor. Even assuming the arbitrator's familiarity with Lucido, that alone is not a basis for finding corruption by the arbitrator. The arbitrator acted within his authority by naming a realtor, and it is not evident from the face of the arbitration award that Lucido was unqualified to handle the sale.

To the extent that plaintiff disagrees with how Lucido handled the marketing or sale of the marital home, that involves a postjudgment matter and is not a basis for vacating the arbitrator's award. See *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193, 197; 452 NW2d 471 (1989).

To the extent plaintiff attempts to raise additional issues, her arguments are cursory with little or no citation to the record or supporting authority, and thus, fail to present a cognizable basis for setting aside the arbitrator's decision. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003).

Affirmed.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick