BARROW v CITY OF DETROIT ELECTION COMMISSION

WHITE v CITY OF DETROIT ELECTION COMMISSION

WILCOXON v CITY OF DETROIT ELECTION COMMISSION

Docket Nos. 317540, 318683, and 318828. Submitted June 11, 2014, at Detroit. Decided June 17, 2014, at 9:05 a.m.

On June 18, 2013, the Court of Appeals held that Michael Duggan was statutorily ineligible to be named as a candidate for Mayor of Detroit on the ballot used in the August 2013 primary election, *Barrow v City of Detroit Election Comm*, 301 Mich App 404 (2013). On July 1, 2013, Duggan filed a declaration of intent to run as a write-in candidate for mayor and began campaigning to have Detroit voters physically write his name onto the primary election ballot. Tom Barrow, a candidate for mayor on the ballot, Citizens United Against Corrupt Government, a nonprofit corporation headed by Robert Davis, and Desmond Michelle White, a Detroit resident and registered voter, then brought an action in the Wayne Circuit Court against the City of Detroit Election Commission, the Detroit City Clerk, Duggan, and the Michael Duggan for Mayor Committee, seeking, in part, a temporary restraining order (TRO) and a writ of mandamus compelling the election commission and the clerk to refrain from counting any write-in votes for Duggan in the primary election on the ground that Duggan did not meet the Detroit City Charter's residency requirements. Plaintiffs also sought a declaratory judgment that Duggan was ineligible to run as a write-in candidate. Defendants opposed the requests and sought summary dismissal of the claims. The court, Lita Masini Popke, J., ruled in defendants' favor and dismissed plaintiffs' claims. Citizens United and White appealed. Docket No. 317540.

White and Davis brought a separate action in the Wayne Circuit Court against the election commission, the city clerk, the Wayne County Board of Canvassers, and Accuform, Inc., the official printer of the ballots for the November 2013 general election, challenging the adequacy of the design for and the instructions provided with the absentee voter ballots circulated for the general election and the procedure by which the election commission ultimately approved the absentee ballot for circulation. Duggan's

motion to intervene as a defendant was granted. Plaintiffs sought a writ of mandamus to preclude counting the votes cast on the challenged absentee ballots and to compel the reprinting and redistribution of the ballots. Plaintiffs also sought a declaratory judgment regarding the conformity of the absentee ballot with legal requirements and the propriety of the ballot-approval method. Defendants sought dismissal, in part, on the basis that, although the election commission had not originally conducted an open meeting for a vote on whether Accuform would print the ballots, it had subsequently held an open meeting at which it formally approved the ballots to be used in the general election and ratified all the prior actions taken by the clerk and the Detroit Department of Elections relating to the ballots. The court, Patricia Perez Fresard, J., held in favor of defendants and dismissed the action. Plaintiffs appealed. Docket No. 318683.

D. Etta Wilcoxon, a candidate for Detroit City Clerk appearing on the general election ballot, and Citizens United Against Corrupt Government also brought a separate action in the Wayne Circuit Court against the City of Detroit Election Commission and the city clerk, seeking a writ of mandamus, a declaratory judgment, and injunctive relief, in part, to prevent the use of satellite absentee voting sites at Wayne County Community College campuses where voters could fill out and turn in their absentee voter ballots. The court, Patricia Perez Fresard, J., rejected plaintiffs' challenge and denied their complaint. Citizens United appealed. Docket No. 318828. The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. Although the appeals arguably are moot, they raise publicly significant issues that are likely to recur and yet evade judicial review and, therefore, the issues may be addressed on appeal.

2. The trial court properly granted summary disposition to defendants in Docket No. 317540, because Duggan satisfied the legal requirements to run as a write-in candidate in the primary election by filing his declaration of intent to run as a write-in candidate by the statutory deadline. The Detroit City Charter does not address the requirements for a write-in candidate to file for office but does provide that, except as provided by the charter or an ordinance, state law applies to the filing for office by candidates. State law sets forth a single precondition for a write-in candidacy—the filing of a declaration of intent by the statutory deadline. Duggan met the deadline for his declaration of intent. Duggan was not obligated to file the same documents required of a candidate whose name appears on the ballot (a nominating petition signed by the requisite percentage of voters and an affidavit of identification) because the requirements for

such filings apply only to candidates seeking to have their names preprinted on the ballot and not to write-in candidates. Plaintiffs were not entitled to mandamus relief in Docket No. 317540.

3. The trial court properly dismissed the challenges to the absentee ballots and the ballot-approval method in Docket No. 318683. The ballot's design comported with the legal requirements for an electronically tallied ballot, the instructions were consistent with those statutorily required for absentee ballots, and any error in the ballot-approval process was remedied by ratification by the election commission. Because the election commission could authorize the actions of its chairperson and its staff, it possessed the authority to ratify their past actions. Plaintiffs failed to establish a violation of the Purity of Elections Clause, Const 1963, art 2, § 4. The trial court properly denied plaintiffs' request for a declaratory judgment, writ of mandamus, or injunctive relief in Docket No. 318683.

4. The trial court properly denied plaintiffs' motion for a declaratory judgment with regard to the clerk's use of satellite clerk offices in Docket No. 318828. Creating satellite offices to allow easy access for absentee voters falls squarely within the roles of the election department and the clerk to supervise, plan, and monitor the city's elections as provided in the city charter. There is no basis to conclude that the use of satellite offices for early absentee voting is prohibited by state statute. The provisions of MCL 168.759(5) and (6) indicate that the clerk's properly credentialed assistants may receive absentee ballot applications at locations other than the clerk's office and that applications may be delivered personally to the clerk or an authorized assistant of the clerk at locations other than the clerk's office. Although MCL 168.761(1) permits an absentee ballot to be delivered to the applicant in person at the clerk's office, it does not prohibit personal delivery at other locations. MCL 168.764a permits delivery to the clerk or an authorized assistant of the clerk at locations other than the clerk's office. MCL 168.764b(2) and (3) permit the use of satellite locations within a city to accept delivery of absentee ballots. There is no doubt that the Legislature has expressly authorized the clerk's office to accept delivery of both applications for absentee ballots and absentee ballots following voting at locations other than the clerk's office. No statutory provisions prohibit the clerk from issuing applications and absentee ballots at satellite locations. The clerk's office includes the two satellite locations. Plaintiffs abandoned on appeal their argument that the use of the satellite clerk's offices violated the Purity of Elections Clause of Const 1963, art 2, § 4.

5. Defendants in Docket Nos. 317540 and 318683 may not challenge in this appeal the trial court's denial of their request for sanctions because they did not file a cross-appeal from the denial

of their request. To the extent that defendants are asking for sanctions against plaintiffs under MCR 7.216(C)(1) for filing a vexatious appeal, defendants must file a separate motion under MCR 7.211(C)(8). The sanctions request set forth in defendants' appellate brief does not constitute a motion under the court rule. Such a motion may be filed within 21 days of the opinion disposing of these appeals. The request for appellate sanctions is denied without prejudice.

Affirmed.

1. ELECTIONS — WRITE-IN CANDIDATES — DECLARATIONS OF INTENT.

State law provides that a write-in candidate must file a declaration of intent to be a write-in candidate with the filing official for that office on or before 4 p.m. on the second Friday immediately before the election; write-in votes cast for a person who did not properly file a declaration of intent to be a write-in candidate may not be counted (MCL 168.737a(1)).

2. MUNICIPAL CORPORATIONS — RATIFICATION OF ACTS OR CONTRACTS OF AGENTS OR OFFICERS.

A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers when the corporation could legally have authorized such acts and contracts in the first instance, except when the mode of contracting operates as a limitation on the power to contract.

3. MUNICIPAL OFFICERS — POWERS.

Municipal officers generally have only such powers as are expressly granted by statute or by sovereign authority or that are necessarily implied from those granted; a power is necessarily implied if it is essential to the exercise of authority that is expressly granted.

4. ELECTIONS — ABSENTEE VOTER BALLOTS.

The Legislature has expressly authorized the office of the clerk of a city, township, or village to accept delivery of both applications for absentee voter ballots and absentee voter ballots following voting at locations other than the clerk's office (MCL 168.759(5) and (6); MCL 168.764a; MCL 168.764b).

5. APPEAL AND ERROR — CROSS-APPEALS.

An appellee may urge an alternative ground for affirmance without filing a cross-appeal, but may not obtain a decision more favorable than that rendered below without filing a cross-appeal.

6. ACTIONS — VEXATIOUS PROCEEDINGS — DAMAGES — MOTIONS.

> A party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion filed under MCR 7.211(C)(8); a request contained in any other pleading, including a brief filed under MCR 7.212, does not constitute a motion under MCR 7.211(C)(8).

*Andrew A. Paterson* for Citizens United Against Corrupt Government and Desmond Michelle White.

Robert Davis *in propria persona.*

*Portia L. Roberson*, Corporation Counsel, and *Sheri L. Whyte, Eric B. Gaabo*, and *Linda Fegins*, Assistant Corporation Counsel, for the City of Detroit Election Commission and the Detroit City Clerk.

*Zenna Elhasan*, Corporation Counsel, and *Janet Anderson-Davis*, Assistant Corporation Counsel, for the Wayne County Board of Canvassers.

*Honigman Miller Schwartz and Cohn LLP* (by *John D. Pirich*) and *Melvin Butch Hollowell, Esq., PC* (by *Melvin Butch Hollowell*), for Michael Duggan and the Michael Duggan for Mayor Committee.

Before: DONOFRIO, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM. These consolidated appeals relate to the primary and general elections held in the city of Detroit in August and November of 2013. Plaintiffs are citizens, mayoral and city clerk candidates, and an activist committee who brought legal challenges to both elections. Defendants are Detroit's current mayor, Michael Duggan, its election commission and city clerk, and Duggan's campaign committee. Plaintiffs moved for declaratory judgments, injunctive relief, and writs of

mandamus in an effort to derail Duggan's write-in campaign, the circulation of allegedly imperfect absentee ballots, and the in-person collection of completed absentee ballots at satellite city clerk offices. The Wayne Circuit Court correctly denied relief in all three cases. We affirm.

## I. BACKGROUND

### A. DOCKET NO. 317540—THE DUGGAN WRITE-IN CAMPAIGN

On June 18, 2013, this Court held Michael Duggan statutorily ineligible to be named as a candidate for Mayor of Detroit on the ballot used in the August 2013 primary election because he had not lived in the city for one year on the date he filed for candidacy. *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 417; 836 NW2d 498 (2013) (*Barrow I*). On July 1, 2013, Duggan filed a declaration of intent to run as a write-in candidate and began campaigning to have Detroit voters physically write his name onto the primary election ballot.

One week later, Tom Barrow (a candidate for mayor on the August 2013 primary ballot), Citizens United Against Corrupt Government (a nonprofit corporation headed by Robert Davis), and D. Michelle White (a resident of and registered voter in Detroit),[1] filed suit against the Detroit Election Commission, the Detroit City Clerk, Duggan, and the Michael Duggan for Mayor Committee. Relevant to this appeal, plaintiffs sought a temporary restraining order (TRO) and a writ of mandamus compelling the election commission and the clerk to refrain from counting any write-in votes for Duggan in the primary election on the ground that he did not meet the Detroit City Charter's residency re-

---

[1] D. Michelle White and Desmond M. White are the same individual.

quirements. They also requested a declaratory judgment that Duggan was ineligible to run as a write-in candidate. Defendants opposed the TRO and asked for summary dismissal of plaintiffs' claims. They argued that Duggan qualified as a write-in candidate because he had lived in the city for more than one year on the date he filed his declaration of intent.

The circuit court ruled in defendants' favor, denying the TRO and summarily dismissing plaintiffs' claims. The court first concluded that *Barrow I*'s preclusion of Duggan's running as an official candidate did not prevent Duggan's write-in campaign. The law governing a write-in candidacy is different from and less strict than the law governing candidacy as an official candidate on the ballot, the court reasoned. An "official candidate" is a person certified to have his or her name printed on the official ballot. A "write-in candidate," the court distinguished, is a person who has met the requirements to have write-in votes cast in his or her name counted, despite ineligibility for placement by name on the ballot. *Barrow I* was limited to the issue of Duggan's official candidacy and did not preclude him from being qualified for consideration as a write-in candidate.

MCL 168.737a establishes the requirements for a write-in candidate, the court ruled. That statute requires only that an individual file a declaration of intent to be a write-in candidate on or before 4:00 p.m. on the second Friday immediately before the election. Duggan met the statutorily calculated deadline of July 26 by filing his declaration of intent on July 1. In addition, MCL 168.321(1) provides that the qualifications of a city official shall be in accordance with the city's charter. The circuit court's review of the Detroit City Charter revealed no specific reference to write-in can-

didates. And the broadly worded candidacy provisions required a person seeking elective office to be a resident and a qualified and registered voter of the city of Detroit for one year at the time of filing for office. Duggan was a resident and a registered voter of Detroit for one year as of April 12, 2013. Accordingly, the court ruled:

> [E]ven though Mr. Duggan could not meet the residency requirements to have his name placed on the ballot as an official candidate, he has met the residency requirements to be considered an eligible write-in candidate because he did not file for that option until July 1, 2013. Applying strict statutory construction to the applicable statutes and City Charter provisions, Mr. Duggan is an eligible write-in candidate.

Thus, the city could count the write-in votes cast in Duggan's favor.[2] This appeal followed.

### B. DOCKET NO. 318683—ADEQUACY OF ABSENTEE BALLOTS

In this appeal, plaintiffs White and Davis challenge the adequacy of the design for and the instructions provided with the absentee ballots circulated for the November 2013 general election and the procedure by which the election commission ultimately approved the absentee ballot for circulation. Plaintiffs filed suit against the election commission, the clerk, Accuform, Inc. (the official printer of the ballots for the November 2013 general election), and the Wayne County Board of Canvassers. The trial court granted Duggan's motion to intervene as a defendant. The suit stemmed from

---

[2] Plaintiffs also unsuccessfully challenged the legality of Duggan's campaign materials. Plaintiffs raise this issue in the statement of questions presented in their appellate brief but make no relevant argument. We therefore deem this issue abandoned and decline to address it. See *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003).

White's belief that the instructions accompanying her absentee ballot were not correctly attached and that the perforations on the ballot did not comply with state law. Plaintiffs further contended that, contrary to state law, it was the city clerk who approved the ballot format rather than approval being given by the election commission at a public meeting. They sought a writ of mandamus to preclude counting the votes cast on the challenged absentee ballots and to compel the reprinting and redistribution of these ballots. Plaintiffs also requested a declaratory judgment regarding the conformity of the absentee ballot with legal requirements and the propriety of the ballot-approval method.

At an October 8 hearing, defendants stipulated that the election commission had not conducted an open meeting for a vote on whether Accuform would print the 2013 general election ballots. The circuit court noted that in *Wilcoxon v Detroit Election Comm*, Wayne Circuit Court No. 13-012502-AW, the case generating the third of these consolidated appeals, the parties had agreed to hold an open commission meeting to vote on ratifying the city clerk's actions, thereby resolving any legal issues regarding the ballot-approval method.[3]

Thereafter, defendants sought dismissal of the claims against them. They argued that the statute requiring diagonal, rather than horizontal, perforations on a ballot applied only to paper ballots counted by hand, not ballots tallied electronically like those used by the city. Defendants further noted that the statute requiring placement of ballot instructions on the ballot's secrecy

---

[3] Plaintiffs in *Wilcoxon* also had challenged the adequacy of the absentee ballot and approval method. The circuit court in that case found that the subsequently conducted open election commission meeting resolved those issues. Plaintiffs in *Wilcoxon* have not challenged that ruling on appeal.

sleeve applied only to ballots cast in a precinct, not to absentee ballots. Defendants further informed the court that the election commission had held an open meeting on October 11, at which it formally approved the ballots to be used in the 2013 general election and ratified all actions taken by the clerk and the Detroit Election Department relating to the ballots, rendering moot plaintiffs' claims.

Another hearing was conducted on October 16, at which White admitted that she had decided not to use her absentee ballot and instead planned to vote in person. The court used this admission to find that White would suffer no harm caused by any claimed absentee ballot deficiency. The court then noted the irreparable harm to the city and thousands of absentee voters if the ballot were found invalid. Specifically, approximately 32,000 absentee ballots had already been sent to the voters, who likely would be disenfranchised if the city had to quickly reprint and redistribute the ballots. The court dismissed plaintiffs' case in its entirety, and this appeal followed.

### C. DOCKET NO. 318828—OFF-SITE, IN-PERSON ABSENTEE VOTING

For the general election, the clerk and the election commission arranged specific dates, prior to the actual Election Day, for voters to fill out and turn in their absentee ballots at satellite locations situated at Wayne County Community College campuses. Beginning on October 21, 2013, and running through November 4, 2013, registered voters in the city of Detroit could appear at these locations, apply for, and cast absentee ballots. Plaintiffs Citizens United and D. Etta Wilcoxon (a Detroit City Clerk candidate appearing on the general election ballot) filed an emergency complaint for writ of mandamus, declaratory judgment, and injunc-

tive relief. Relevant to this appeal, plaintiffs sought to bar the off-site, in-person voting method, arguing that a voter may personally apply for and submit an absentee ballot only at the clerk's official office.

The circuit court rejected plaintiffs' challenge to the satellite absentee voting sites. First, the court noted that the extensively advertised satellite sites were scheduled to open only three days later, with a weekend intervening. Shuttering the satellite offices could preclude some voters from casting a ballot. Second, the method had been used in the 2012 primary and general elections and the 2013 primary election without any harm or effect on the purity of the election process. Because plaintiffs offered only speculation regarding possible adverse effects of using the satellite locations, the court denied their complaint. When Citizens United Against Corrupt Government appealed, this Court consolidated all three appeals.

### II. MOOTNESS

Arguably these appeals are moot. The August 2013 primary election and the November 2013 general election are historical events. The winning candidates have now held office for more than six months. "This Court's duty is to consider and decide actual cases and controversies." *Morales v Parole Bd*, 260 Mich App 29, 32; 676 NW2d 221 (2003). We generally do not address moot questions or declare legal principles that have no practical effect in a case. *Id*. "An issue is moot if an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) (cita-

tion omitted). "However, a moot issue will be reviewed if it is publicly significant, likely to recur, and yet likely to evade judicial review." *In re Application of Indiana Mich Power Co to Increase Rates*, 297 Mich App 332, 340; 824 NW2d 246 (2012).

The contour of the election requirements for write-in candidacy in the city of Detroit presents a publicly significant issue. Legal questions likely will recur because write-in candidates may run in future elections, particularly given Duggan's successful write-in candidacy. Yet the issues may evade review given the short time between the statutory deadline for filing a declaration of intent to run as a write-in candidate and the subsequent election. See MCL 168.737a(1) (requiring a write-in candidate to file a declaration of intent to be a write-in candidate on or before 4:00 p.m. on the second Friday immediately before the election); *Grano v Ortisi*, 86 Mich App 482, 487; 272 NW2d 693 (1978) (holding, in a dispute over candidacy requirements, that although the election had already occurred, the issue raised would be reviewed because it was capable of repetition yet was likely to evade review given the short time between when nominating petitions are filed and the subsequent election is held).

The same is true for the absentee ballot procedures used in the Detroit general election, including the methods for filing those ballots with the city. These issues bear great public significance and likely will recur if the city adopts the same ballot format and employs satellite offices in future elections. Again, time constraints frequently render complete appellate review impossible in advance of an election. Accordingly, we review plaintiffs' contentions despite the completion of the challenged elections.

### III. STANDARDS OF REVIEW

In the separate actions below, the circuit court denied plaintiffs TROs, declaratory judgments, and writs of mandamus. In relation to the Duggan write-in campaign, the court summarily dismissed plaintiffs' complaint based on MCR 2.116(C)(10).

We review de novo a circuit court's decision on a motion for summary disposition. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

We also review de novo a circuit court's decision whether to issue a writ of mandamus. *Barrow I*, 301 Mich App at 411.

> A plaintiff has the burden of establishing entitlement to the extraordinary remedy of a writ of mandamus. The plaintiff must show that (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform such act, (3) the act is ministerial in nature such that it

involves no discretion or judgment, and (4) the plaintiff has no other adequate legal or equitable remedy. [*Id.* at 411-412 (citation omitted).]

Whether a defendant has a clear legal duty to perform an act and whether a plaintiff has a clear legal right to performance are legal questions that we also consider de novo. *Id.* at 411.

"Questions of law relative to declaratory judgment actions are reviewed de novo, but the trial court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 376; 836 NW2d 257 (2013). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). The purpose of a declaratory judgment is to definitively declare the parties' rights and duties, to guide their future conduct and relations, and to preserve their legal rights. See *Allstate Ins Co v Hayes*, 442 Mich 56, 74; 499 NW2d 743 (1993).

We review for an abuse of discretion a circuit court's decision whether to grant injunctive relief. *Kernen v Homestead Dev Co*, 232 Mich App 503, 509-510; 591 NW2d 369 (1998).

When deciding whether to grant an injunction under traditional equitable principles,

a court must consider (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued.

> [*Mich AFSCME Council 25 v Woodhaven-Brownstown Sch
> Dist*, 293 Mich App 143, 148; 809 NW2d 444 (2011),
> quoting *Alliance for the Mentally Ill of Mich v Dep't of
> Community Health*, 231 Mich App 647, 660-661; 588 NW2d
> 133 (1998).]

These consolidated appeals also involve the interpretation and application of various election-related statutes and provisions of the Detroit City Charter. The interpretation of a statute or a municipal charter presents a question of law that we review de novo. *Hackel v Macomb Co Comm*, 298 Mich App 311, 316; 826 NW2d 753 (2012).

> When reviewing the provisions of a home rule city charter,
> we apply the same rules that we apply to the construction
> of statutes. The provisions are to be read in context, with
> the plain and ordinary meaning given to every word.
> Judicial construction is not permitted when the language is
> clear and unambiguous. Courts apply unambiguous stat-
> utes as written. [*Barrow I*, 301 Mich App at 413-414
> (citations omitted).]

"This Court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Bay City v Bay Co Treasurer*, 292 Mich App 156, 166-167; 807 NW2d 892 (2011) (quotation marks and citation omitted).

### IV. ANALYSIS

#### A. DOCKET NO. 317540—DUGGAN WRITE-IN CAMPAIGN

The circuit court properly granted summary disposition to defendants in Docket No. 317540, because Duggan satisfied the legal requirements to run as a write-in candidate in the August 2013 primary election for mayor of Detroit. Specifically, Duggan filed his declaration of intent to run as a write-in candidate by the statutory deadline.

State law defers to local rule in the sphere of city elections. See MCL 168.321 (providing that "the qualifications, nomination, election, appointment, term of office, and removal from office of a city officer shall be in accordance with the charter provisions governing the city"). The Detroit City Charter, in turn, falls back on state law to fill any gaps in its election code. See Detroit Charter, § 3-106 ("Except as otherwise provided by this Charter or ordinance, state law applies to the qualifications and registration of voters, the filing for office by candidates, the filing of petitions for initiative and referendum, and the conduct and canvass of city elections."). The Detroit City Charter does not address the requirements for a *write-in* candidate to file for office. Thus, under § 3-106, state law applies.

State law sets forth a single, simple precondition for a write-in candidacy—filing a declaration of intent by a certain date. MCL 168.737a(1) provides, in relevant part:

> [T]he board of election inspectors shall not count a write-in vote for a person unless that person has filed a declaration of intent to be a write-in candidate as provided in this section. The write-in candidate shall file the declaration of intent to be a write-in candidate with the filing official for that elective office on or before 4 p.m. on the second Friday immediately before the election.

Indisputably, Duggan filed his declaration of intent to be a write-in candidate on July 1, 2013, which was before the statutory deadline of the second Friday immediately before the August 2013 primary election. Accordingly, Duggan qualified to run as a write-in candidate and to have the write-in votes cast in his favor counted.

Despite the plain statutory language, plaintiffs contend that Duggan was additionally obliged to file the

same documents required of a candidate whose name appears on the ballot: a nominating petition signed by the requisite percentage of voters and an affidavit of identification. Plaintiffs cite Detroit Charter, § 3-109, which states, in relevant part: "A candidate for nomination to an elective city office shall file with the City Clerk a non-partisan nominating petition consisting of one (1) or more petition forms." Such a petition must "be signed by a number of voters of the City equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the total number of votes cast in the preceding Regular City General Election for the office which the candidate seeks." *Id.* Plaintiffs further cite MCL 168.558(1), which provides, in relevant part:

> When filing a nominating petition . . . for a federal, county, state, city, township, village, metropolitan district, or school district office in any election, a candidate shall file with the officer with whom the petitions . . . is filed 2 copies of an affidavit of identity.

According to plaintiffs, the term "candidate" used in § 3-109 includes a write-in candidate, and Duggan therefore needed to file a nominating petition containing the requisite number of voter signatures. Likewise, plaintiffs insist, MCL 168.558(1) mandated that Duggan file two copies of an affidavit of identity.

Plaintiffs' argument lacks merit. The charter provision neither refers to write-in candidates nor prescribes what a write-in candidate must file. Rather, § 3-109 merely states that a "candidate for nomination to an elective city office" must file a nominating petition with the requisite number of signatures. The charter does not define the term "candidate." "This Court may rely on a dictionary definition to give an otherwise undefined word its plain and ordinary meaning." *Hackel,* 298 Mich App at 319 n 2. *Random House Webster's College*

*Dictionary* (2001) defines "candidate" as "a person who seeks or is selected by others for an office, honor, etc." Duggan arguably could be viewed as a "candidate" under this definition because, by filing a declaration of intent to be a write-in candidate for mayor of Detroit, he was seeking an office.

But such an interpretation of the charter language is ultimately untenable. "[C]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (quotation marks and citation omitted). "Statutes that address the same subject matter or share a common purpose are *in pari materia* and must be read collectively as one law, even when there is no reference to one another." *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 472; 838 NW2d 736 (2013). And Detroit Charter, § 3-106 expressly instructs that any gaps in the city election code are to be filled by application of state election law. It follows that statutory provisions on the same subject matter or sharing a common purpose with respect to filing for office must be read collectively with charter provisions unless the charter or ordinance provides otherwise.

Plaintiffs' construction of Detroit Charter, § 3-109 and MCL 168.558(1) would require write-in candidates to collect the same number of signatures and file the same documents required of candidates whose names will be preprinted on the official ballot. By definition, however, a write-in candidate's name does *not* appear on the ballot, which is why such a candidate's name must be *written in* by voters. If a candidate filed all documents prerequisite to placement of his or her name on the preprinted ballot, that candidate would have no

reason to mount a write-in campaign. As defendants observe, a candidate generally chooses the write-in option to avoid the more stringent conditions precedent to being named on the preprinted ballot. Thus, plaintiffs' proposed interpretation of § 3-109 would effectively eliminate write-in candidacies. This would, in turn, render as surplusage or nugatory the language in MCL 168.737a(1) necessitating that a write-in candidate file a declaration of intent. Therefore, the requirements for filing a nominating petition and an affidavit of identity must apply only to candidates seeking to have their names preprinted on the ballot and *not* to write-in candidates.

Plaintiffs' reliance on *Barrow I*, 301 Mich App 404, as precluding Duggan's write-in campaign is misplaced. In *Barrow I*, 301 Mich App at 426, this Court held that Duggan did not meet the requirements for including his name *on the ballot*. As discussed, a write-in candidate's name does not appear on the ballot, the name must be written in by the voter. Moreover, in rejecting a constitutional challenge to the charter's durational residency requirement, this Court expressly recognized the possibility that Duggan could still be a write-in candidate under MCL 168.737a. *Barrow I*, 301 Mich App at 425 n 16. *Barrow I* lends no support to plaintiffs' position.

Because Duggan satisfied the legal requirements to be a write-in candidate in the August 2013 primary election for mayor of Detroit, plaintiffs' declaratory judgment claim fails. Nor were plaintiffs entitled to mandamus relief, given that they failed to establish that the clerk and the election commission owed a clear legal duty to reject Duggan's declaration of intent to be a write-in candidate or to refuse to count write-in votes

cast for Duggan in the primary election. Therefore, the circuit court properly granted summary disposition to defendants.[4]

### B. DOCKET NO. 318683—ADEQUACY OF ABSENTEE BALLOTS

The circuit court also properly dismissed on the merits White's and Davis's challenges to the absentee ballots and the ballot-approval method in Docket No. 318683.[5] The ballot's design comported with the legal requirements for an electronically tallied ballot, the instructions were consistent with those statutorily required for absentee ballots, and any error in the ballot-approval process was remedied by ratification.

Plaintiffs first contend that White's actual absentee ballot did not conform to the format prescribed in MCL 168.705, which states, in relevant part:

> The ballots of each kind shall be of uniform size and printed in black ink on white paper of a grade equal to 50-pound book, machine finished, and sufficiently thick so that the printing cannot be distinguished from the back. *The ballots of each kind shall be perforated diagonally across the upper right-hand corner of the face thereof*, so that the corner can be readily torn off. Printed on the detachable corner shall be *the name or kind of ballot*, and *a bold-face letter corresponding to a similar letter on the ballot box*. The ballots shall be numbered consecutively on such corner, such number to be printed thereon. [Emphasis added.]

---

[4] Plaintiffs raise additional challenges in the statement of questions presented, which they entirely fail to address in the body of their appellate brief. Those issues are abandoned and we decline to consider them. See *Houghton*, 256 Mich App at 339-340.

[5] As the lower court reached the correct result on the merits, we need not consider the parties' alternate challenges based on Davis's lack of standing and failure to file a circuit court bond.

Specifically, plaintiffs assert that White's actual absentee ballot was noncompliant because the perforation was horizontal rather than diagonal, and there was no detachable corner that stated the name or kind of ballot and a bold-face letter corresponding to a similar letter on the ballot box.

Plaintiffs fail to recognize that MCL 168.705, which was enacted by 1954 PA 116, pertains to paper ballots that are placed in a ballot box and counted by hand. More recent enactments govern modern elections in which electronic voting tabulators are used. In particular, MCL 168.794c, which was rewritten by 1990 PA 109, now provides, in relevant part:

> The provisions of [MCL 168.794 to MCL 168.799a] control with respect to elections where electronic voting systems are used, and shall be liberally construed so as to carry out the purpose of the provisions. A provision of law relating to the conduct of elections that conflicts with [MCL 168.794 to MCL 168.799a] does not apply to the conduct of elections with an approved electronic voting system.

See also *Vorva v Plymouth-Canton Community Sch Dist*, 230 Mich App 651, 657; 584 NW2d 743 (1998) (recognizing that MCL 168.794 to MCL 168.799a "control with respect to elections where electronic voting systems are used").

Detroit uses an electronic voting system. Therefore, MCL 168.794 through MCL 168.799a control with respect to Detroit elections, and not MCL 168.705. Nothing in the applicable statutes compels a diagonal perforation or placement on a detachable corner of the information set forth in MCL 168.705. Rather, MCL 168.795b(2) states: "Ballots that are processed through electronic tabulating equipment after the elector has voted shall have an attached, numbered, perforated stub." White's absentee

ballot contained an attached, numbered, perforated stub. The absentee ballot thus conformed to the applicable statutory requirements.[6]

Plaintiffs contend that the board of canvassers, city clerk, and election commission improperly relied on the Secretary of State's Michigan Ballot Production Standards Manual to determine the propriety of the ballot. We find irrelevant whether defendants referred to the manual as the ballot actually complied with statutory requirements. In any event, even if the manual lacks the force of law, it may still be considered as explanatory, *Hanlin v Saugatuck Twp*, 299 Mich App 233, 249; 829 NW2d 335 (2013), and defendants could consider it when designing the ballot.

Next, plaintiffs contend that the clerk and election commission failed to include the required ballot-marking instructions on the front of the ballot secrecy sleeve or in a clear plastic pocket on the front of the secrecy sleeve accompanying the absentee ballot. MCL 168.736c and MCL 168.736d require the inclusion of specific "ballot marking instructions" on "the ballot secrecy sleeve" at both general and nonpartisan elections. An absentee ballot does not have a ballot secrecy sleeve, however. Such sleeves are used to protect a voter's privacy at the public polls and are unnecessary when voting in the sanctity of one's home. Rather, MCL 168.764 and MCL 168.764a only require the instructions to "be included" with the absentee ballots sent to voters. Plaintiffs try to bootstrap the requirement that the statutorily required instructions be printed on a

---

[6] Plaintiffs also contend that Accuform lacked legal authority to print the ballots for the November 2013 general election pursuant to MCL 168.718 (proscribing printing of nonconforming ballots), because the perforation did not comply with MCL 168.705. As the ballot conformed with those statutes applicable to electronically tabulated elections, this argument lacks any merit.

ballot secrecy sleeve through MCL 168.764(c)'s mandate that "[f]or a nonpartisan election, the ballot marking instructions as provided in [MCL 168.736d]" must "be included with each absent voter ballot furnished." This language does not suggest that the instructions must be provided in the manner stated in MCL 168.736d, only that the same instructions must "be included" with the absentee ballot. As the absentee ballot provided to White included these instructions, no violation of law occurred.

Plaintiffs further argue that the clerk usurped the authority of the election commission concerning the printing of the ballots. It is well established that it is the province of the election commission, not the city clerk, to approve and furnish the ballots to be used in an election. In *Roseville Bd of Election Comm'rs v Roseville City Clerk*, 53 Mich App 477, 480-481; 220 NW2d 181 (1974), this Court agreed with the plaintiff-city board of election commissioners that it, rather than the defendant-city clerk, had the duty to prepare, print, and deliver the ballots to be used. And MCL 168.560 prohibits the counting of ballots not furnished by the election commission: "Ballots other than those furnished by the board of election commissioners, according to the provisions of this act, shall not be used, cast, or counted in any election precinct at any election. The size of all official ballots shall be as the board of election commissioners prescribes."[7] Plaintiffs cite *Taylor v Cur-*

---

[7] Plaintiffs note language in other statutory provisions reflecting that only the election commission has the authority to prepare, print, and deliver the ballots. See MCL 168.323 (stating the primary results shall be "certified to the board of city election commissioners, who shall prepare and furnish ballots for the ensuing election"); MCL 168.690 (providing that a city board of election commissioners shall have the ballots printed and delivered to the election commission's city clerk at least 10 days before the election); MCL 168.719 (stating that a city's election commis-

*rie*, 277 Mich App 85, 94-95; 743 NW2d 571 (2007), for the proposition that municipal officers have only such powers as are conferred on them by law, and therefore the city clerk had no authority to act on the election commission's behalf. Plaintiffs contend that the city clerk's admission at a hearing held in *Wilcoxon* that she alone approved the ballot rendered the election void, and the election commission could not retroactively delegate its authority to the clerk through a subsequent vote.

At the October 2 hearing in *Wilcoxon*, the transcript of which was provided with the record in this appeal, the city clerk explained that she chairs the election commission. She asserted that she acted in her dual capacity when giving final approval of the ballot and in ordering the ballot's printing and distribution. The clerk testified that the election commission met "on the front end," i.e., before the primary election, to approve the general layout of the ballots for both the August 2013 primary election and the November 2013 general election, but admitted that the commission had not, as of October 2, reconvened to approve the printing of the specific ballot for the general election. When asked who had authorized the printer, Accuform, to begin printing the ballots for the November general election, the clerk indicated that the city's election department had done so. The clerk appoints the director and the deputy director of the election department. The clerk further explained that her actions were consistent with the past practices and policies of the election commission dating back to the early 1990s. The clerk must administer the election in accordance with the law. The ordering and

sion shall perform the duties regarding the preparation, printing, and delivery of ballots that are required by law of the boards of election commissioners of counties).

mailing of ballots are perfunctory, administrative tasks, in the clerk's view. Accordingly, she believed that the election commission was not required to hold a public meeting and vote before the clerk performed those tasks.

City charter provisions support the clerk's testimony. Detroit Charter, § 3-101 provides: "A Department of Elections shall plan, monitor and administer all elections in the City of Detroit."

> The Department of Elections is headed by the Election Commission composed of:
>
> 1. The City Clerk, who is Chairperson;
> 2. The President of the City Council; and
> 3. The Corporation Counsel. [Detroit Charter, § 3-102.]

Detroit Charter, § 3-103 states that "[t]he Election Commission has general supervision of all elections in the City and may hire assistants, inspectors, and other election personnel." Further,

> The City Clerk shall appoint a Director and Deputy Director of the Department of Elections, who are skilled and experienced in municipal election administration. Under the direction of the City Clerk and in accordance with general policies of the Election Commission, the Director shall supervise, plan and monitor all activities and operations incidental to the conduct of elections and voter registration. [Detroit Charter, § 3-104.]

The city clerk is the chairperson of the election commission and oversees the election department, which acts as the staff for the commission. According to the city clerk's testimony, the election commission approved of the general ballot format and the chairperson of the election commission, with the help of the staff—the election department—took all necessary steps thereafter. We can find no support for the propo-

sition that the election commission must provide approval before every step in the ballot preparation and printing process. And we need not answer that question in this appeal as the election commission ratified the city clerk's and election department's actions.

The election commission held an open meeting on October 11, at which it unanimously adopted a resolution approving the ballots to be used in the November 2013 general election and ratified all actions taken by the clerk and the election department relating to the ballots. The resolution stated, in relevant part:

> **NOW, THEREFORE, BE IT RESOLVED,** The Commission accepts the results of the 2013 primary election, as certified by the Wayne County Board of Canvassers and the State of Michigan, and approves the content, size, form and format of the 2013 general election ballot, which has been printed by Accuform Printing and Graphics, Inc.; and
>
> **NOW BE IT FURTHER RESOLVED,** The Commission approves and ratifies all actions previously taken by Janice Winfrey, taken in her capacity as Chairperson of the Commission and as Detroit City Clerk, with the assistance of the Director and Deputy Director of the Detroit Department of Elections ("the Elections Department") and the Elections Department's staff, agents or representatives, relating to the review, approval, handling, procurement, printing, furnishing, delivery, mailing and distribution of ballots for the 2013 general election; and
>
> **NOW BE IT FINALLY RESOLVED,** The Commission further authorizes Ms. Winfrey, in her capacity as Chairperson of the Commission and as Detroit City Clerk, with the assistance of the Director and Deputy Director of the Elections Department and the Elections Department's staff, agents or representatives, and all other members of the Commission, to take such additional actions as may be required for the completion of the 2013 general election, including but not limited to the review, approval, handling, procurement, printing, furnishing, delivery, mailing, distribution, collecting, tabulation, transportation and storing of

ballots for the 2013 general election, and all other duties incidental to the administration of the election.

In light of the election commission's October 11, 2013 resolution approving the ballots and ratifying all of the clerk's actions relative to the preparation, printing, and distribution of the ballots, plaintiffs' argument on this issue lacks merit. Even accepting plaintiffs' contentions that the election commission holds the exclusive power to authorize the preparation, printing, and distribution of the ballots and that the clerk was acting as the clerk and not the election commission chairperson, the election commission did precisely what was required in its October 11, 2013 resolution.

Plaintiffs' suggestion that the election commission could not retroactively authorize the clerk's actions also fails.

> The doctrine is well established that a municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, when the corporation might legally have authorized such acts and contracts in the first instance, subject to exception where the mode of contracting operates as a limitation upon the power to contract. [*Davis v Mayor, Recorder, & Aldermen of the City of Jackson*, 61 Mich 530, 540; 28 NW 526 (1886) (citation omitted).]

See also *Commercial State Bank of Shepherd v Sch Dist No 3 of Coe Twp, Isabella Co*, 225 Mich 656, 663; 196 NW 373 (1923) (holding that a school district's board could subsequently ratify that which it could authorize in the first place). The clerk prepared, printed, and distributed the absentee ballots in her capacities as clerk and chairperson of the election commission, with the assistance of the election department, which functions as the election commission's staff. Therefore, because the election commission could authorize the

actions of its chairperson and its staff in the first place, it also possessed the authority to ratify their past actions.

Plaintiffs argue that the city defendants' and Accuform's actions violated the Purity of Elections Clause of Const 1963, art 2, § 4, which states, in relevant part:

> The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in this constitution or in the constitution and laws of the United States. The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.

"The phrase 'purity of elections' does not have a single precise meaning. However, it unmistakably requires fairness and evenhandedness in the election laws of this state." *McDonald v Grand Traverse Co Election Comm*, 255 Mich App 674, 692-693; 662 NW2d 804 (2003) (some quotation marks, ellipsis, and citations omitted). Plaintiffs argue that, because the Purity of Elections Clause entrusts to the Legislature the authority to make laws to guarantee the purity of elections, to preserve the secrecy of the ballot, and to guard against abuses of the elective franchise, *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193, 205; 452 NW2d 471 (1989), and "[t]he Legislature enacted the Michigan Election Law pursuant to its constitutional grant of authority," quoting *Fleming v Macomb Co Clerk*, unpublished opinion per curiam of the Court of Appeals, issued June 26, 2008 (Docket No. 279966), p 4, this Court cannot permit defendants to ignore statutory provisions concerning the proper printing of the ballots. This argument assumes that defendants violated provisions of the Michigan Election Law, a premise that is

incorrect for the reasons already discussed. Therefore, plaintiffs have failed to establish that defendants violated the Purity of Elections Clause.

Accordingly, because all of plaintiffs' arguments are devoid of merit, the circuit court did not err by denying plaintiffs' request for a declaratory judgment. The circuit court also properly declined to issue a writ of mandamus because defendants did not have a clear legal duty to perform the acts requested by plaintiffs. *Barrow I*, 301 Mich App at 411-412.

Nor have plaintiffs established entitlement to injunctive relief requiring the reprinting and remailing of the absentee ballots. "To obtain a preliminary injunction, the moving party bears the burden of proving that the traditional four elements favor the issuance of a preliminary injunction." *Hammel v Speaker of the House of Representatives*, 297 Mich App 641, 648; 825 NW2d 616 (2012) (quotation marks and citation omitted). The first element is "the likelihood that the party seeking the injunction will prevail on the merits[.]" *Mich AFSCME Council 25*, 293 Mich App at 148 (quotation marks and citation omitted). Because plaintiffs failed to meet even the threshold burden, they were not entitled to the requested relief.

### C. DOCKET NO. 318828—SATELLITE CLERK OFFICES

The circuit court also properly denied plaintiffs' motion for a declaratory judgment pertaining to the clerk's use of satellite locations for in-person absentee voting in Docket No. 318828. Various statutes recognize or imply the authority of the clerk and his or her staff to distribute and accept absentee ballots at places other than the clerk's regular office. Moreover, the satellite locations were part of the official clerk's office during the period in which they operated.

Plaintiffs argue that defendants lack authority to establish satellite locations for the purpose of allowing early, in-person absentee voting. Yet, "[t]he city of Detroit is a home rule city." And our Supreme Court has "held that home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied." *AFSCME v Detroit*, 468 Mich 388, 410; 662 NW2d 695 (2003) (quotation marks and citations omitted); see also Const 1963, art 7, § 22. Municipal officers generally have only such powers as are expressly granted by statute or by sovereign authority or that are necessarily implied from those granted. *Taylor*, 277 Mich App at 94. "[A] power is necessarily implied if it is essential to the exercise of authority that is expressly granted." *Id.* at 95.

The election commission has general supervision of all elections in the city. Detroit Charter, § 3-103. The clerk, who acts as the chairperson of the election commission, has the authority to appoint the director and deputy director of the city's election department. Detroit Charter, § 3-104. And "[u]nder the direction of the City Clerk and in accordance with general policies of the Election Commission, the Director shall supervise, plan and monitor all activities and operations incidental to the conduct of elections and voter registration." *Id.* Creating satellite offices to allow easy access for absentee voters falls squarely within the election department's and the clerk's role of "supervis[ing], plan[ning] and monitor[ing]" the city's elections.

Moreover, we find no basis to conclude that the use of satellite offices for early absentee voting is prohibited by statute. Indeed, statutes recognize the clerk's authority to receive absentee ballots and applications

for absentee ballots at locations other than the clerk's office. MCL 168.759(5) requires the clerk to have absentee ballot application forms available in the clerk's office at all times and to furnish an absentee ballot application form to anyone upon a verbal or written request. This provision sets forth language that is to be included in applications, including: "An assistant authorized by the clerk *who receives absent voter ballot applications at a location other than the clerk's office* must have credentials signed by the clerk." (Emphasis added.) This language plainly reflects that the clerk's properly credentialed assistants may receive absentee ballot applications at locations other than the clerk's office. In addition, instructions for applicants for absentee voter ballots contained in MCL 168.759(6) include a direction to deliver the application by one of various methods, one of which is to "[d]eliver the application personally to the clerk's office, to the clerk, or to an authorized assistant of the clerk." This language indicates that an absentee voter ballot application may be delivered personally to the clerk or an authorized assistant of the clerk at locations other than the clerk's office; otherwise, the portion of the sentence after "clerk's office" would be rendered surplusage. See *Johnson*, 492 Mich at 177.

Plaintiffs misconstrue language in MCL 168.761, which addresses the manner of delivering absentee ballots to applicants. MCL 168.761(1) states that the clerk

> shall forward by mail, postage prepaid, or shall deliver personally 1 of the ballots or set of ballots if there is more than 1 kind of ballot to be voted to the applicant. Subject to the identification requirement in subsection (6), absent voter ballots may be delivered to an applicant in person at the office of the clerk.

Although this provision permits an absentee ballot to be delivered to the applicant in person at the clerk's office,

it does not prohibit personal delivery at other locations. MCL 168.761(4) provides:

> Absent voter ballots shall be issued in the same order in which applications are received by the clerk of a city, township, or village, as nearly as may be, and each ballot issued shall bear the lowest number of each kind available for this purpose. However, this provision does not prohibit a clerk from immediately issuing an absent voter ballot to an absent voter who applies in person in the clerk's office for absent voter ballots.

This statute merely allows the clerk to issue absentee ballots out of order to persons who apply in person at the clerk's office, i.e., before ballots are issued to voters who had applied by mail. It does not prohibit delivering an absentee ballot to an applicant at a satellite location.

Further, MCL 168.764a provides instructions for absentee voters that must be included with each ballot. The instructions provide six steps to follow. Step 3 provides that after voting, the elector is to place the ballot in a return envelope. Step 5 of the instructions states: "Deliver the return envelope by 1 of the following methods: . . . Deliver the envelope personally to the office of the clerk, to the clerk, or to an authorized assistant of the clerk." MCL 168.764a. This language permits delivery to the clerk or an authorized assistant of the clerk at locations other than the clerk's office; otherwise the language following the phrase "office of the clerk" would be rendered mere surplusage. See *Johnson*, 492 Mich at 177.

MCL 168.764b(2) states: "The clerk of a city, township, or village may accept delivery of absent voter ballots at any location in the city, township, or village." Likewise, MCL 168.764b(3) states, in relevant part:

> The clerk of a city, township, or village may appoint the number of assistants necessary to accept delivery of absent

voter ballots at any location in the city, township, or village. . . . An assistant appointed to receive ballots at a location other than the office of the clerk shall be furnished credentials of authority by the clerk. If an absent voter's ballot is received by an assistant at any location other than the clerk's office the assistant, upon request, shall exhibit the credentials to the absent voter before the assistant accepts an absent voter ballot.

These provisions plainly permit the use of satellite locations within the city to accept delivery of absentee ballots.

Read together, the above provisions allow the use of satellite locations for early absentee voting. MCL 168.759(5) expressly allows a clerk's assistant to receive absentee ballot applications at locations other than the clerk's office; MCL 168.759(6) reflects that an applicant may deliver the application to the clerk or an assistant of the clerk at a location other than the clerk's office; MCL 168.764a indicates that, after voting, the absentee ballot may be delivered to the clerk or an authorized assistant at a location other than the clerk's office; and MCL 168.764b expressly allows the clerk or a properly credentialed assistant to accept delivery of absentee ballots at any location in the city. Thus, there is no doubt that the Legislature has expressly authorized the clerk's office to accept delivery of both applications for absentee ballots and absentee ballots following voting at locations other than the clerk's office.

Further, no statutory provisions prohibit the clerk from issuing applications and absentee ballots at satellite locations. Although MCL 168.761 permits delivery of absentee ballots at the clerk's office to voters who apply in person, it does not proscribe in-person delivery at other locations. Read as a whole, the statutory scheme permits the use of satellite locations. Defendants acted within their expressly granted and neces-

sarily implied powers in supervising or directing the conduct of the election by allowing absentee voting in person at two satellite locations.

Furthermore, the clerk's "office" includes the two satellite locations. No statute defines what encompasses the city clerk's "office." *Random House Webster's College Dictionary* (2001) defines "office" as "a place where business is conducted." The clerk conducted business at the two satellite locations by performing absentee voting activities at those locations, activities encompassed in the clerk's duties by the city charter. See Detroit Charter, §§ 3-102, 3-103, and 3-104. While MCL 168.761(1) provides that "absent voter ballots may be delivered to an applicant in person at the office of the clerk," the use of the singular term "office" does not mean that only one physical location can constitute the clerk's office. See MCL 8.3b ("Every word importing the singular number only may extend to and embrace the plural number, and every word importing the plural number may be applied and limited to the singular number.").

Plaintiffs also suggest that the use of satellite locations violated the Purity of Elections Clause of Const 1963, art 2, § 4. According to plaintiffs, "there are no safeguards in place to ensure that the transfer and proper custody of the absentee ballots cast at those proposed satellite locations will be properly secured and transferred as the Michigan Election Law requires." Plaintiffs offer no record evidence to support their assertion that defendants failed to ensure the safe transfer and proper custody of the absentee ballots cast at satellite locations. "This Court will not search the record for factual support for a party's claim." *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009); see also MCR 7.212(C)(7) ("Facts stated must be supported by specific page references to the transcript,

the pleadings, or other document or paper filed with the trial court."). This argument is thus abandoned. *McIntosh*, 282 Mich App at 485.

## V. SANCTIONS

Duggan and his campaign committee request sanctions in Docket Nos. 317540 and 318683. They assert that plaintiffs filed frivolous complaints and motions for temporary restraining orders and pursued frivolous and vexatious appeals. MCR 2.114(D) and (E) provide for sanctions when a plaintiff files a frivolous action or an action meant to harass a defendant. However, defendants have not sought relief in the correct manner.

To the extent that defendants seek the imposition of sanctions with respect to documents filed *in the circuit court*, the issue is not properly before us. Defendants requested sanctions in the circuit court, but that request was denied. As the motion was denied and no sanctions were awarded, defendants were required to file a cross-appeal. An appellee may urge an alternative ground for affirmance without filing a cross-appeal, but an appellee may not obtain a decision more favorable than that rendered below without filing a cross-appeal. *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 351; 725 NW2d 684 (2006). Defendants have not filed a cross-appeal and therefore may not challenge in this appeal the lower court's failure to award sanctions.

To the extent that defendants are asking for sanctions against plaintiffs for filing a vexatious appeal, defendants must file a separate motion. MCR 7.216(C)(1) authorizes sanctions for a vexatious appeal as follows:

> The Court of Appeals may, on its own initiative or *on the motion of any party filed under MCR 7.211(C)(8)*, assess actual and punitive damages or take other disciplinary

action when it determines that an appeal or any of the proceedings in an appeal was vexatious because

(a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal; or

(b) a pleading, motion, argument, brief, document, or record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court. [Emphasis added.]

MCR 7.211(C)(8), in turn, provides:

*Vexatious Proceedings.* A party's request for damages or other disciplinary action under MCR 7.216(C) *must be contained in a motion filed under this rule. A request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion under this rule.* A party may file a motion for damages or other disciplinary action under MCR 7.216(C) at any time within 21 days after the date of the order or opinion that disposes of the matter that is asserted to have been vexatious. [Emphasis added.]

Thus, the sanctions request set forth in defendants' appellate brief does not constitute a motion under the court rule. Such a motion may be filed within 21 days after the date of this Court's opinion disposing of these appeals. MCR 7.211(C)(8). Therefore, we deny the request for appellate sanctions without prejudice.

We affirm the circuit court's actions in all three appeals. In Docket Nos. 317540 and 318683, we deny without prejudice Duggan's and the Michael Duggan for Mayor Committee's request for appellate sanctions. Although defendants are the prevailing parties on the merits, they may not tax costs pursuant to MCR 7.219, as these appeals involve significant questions of public interest. See *East Grand Rapids Sch Dist v Kent Co Tax*

*Allocation Bd*, 415 Mich 381, 401; 330 NW2d 7 (1982); *Polania v State Employees' Retirement Sys*, 299 Mich App 322, 335; 830 NW2d 773 (2013).

DONOFRIO, P.J., and GLEICHER and M. J. KELLY, JJ., concurred.